16590

JOHNSON v. BALDWIN *ET AL.*

(69 S. E. (2d) 585)

*Messrs. Young, Bell & Callison,* of Greenwood, *and Kerr & Evins and Harvey W. Johnson,* of Spartanburg, *for Appellants,* cite:

*Messrs. Haynsworth & Haynsworth and Stephen Nettles,* of Greenville, *and Grier, McDonald, Todd & Burns,* of Greenwood, *for Respondents,* cite:

February 8, 1952

OXNER, Justice.

This is a derivative action brought by a stockholder of the Brandon Corporation to recover damages for alleged mismanagement on the part of the directors. Certain injunctive relief is also sought. It was commenced in January, 1946, by the service of a summons dated July 14, 1945. The case is here on appeal from an order dated March 31, 1951, dismissing the complaint upon the ground that the plaintiff had ceased to be a stockholder and, therefore, no longer had the capacity to prosecute the action.

It was alleged in the complaint that the plaintiff, appellant here, owned 56 shares of "Class A" stock and 56 shares of "Class B" stock in the Brandon Corporation, and that the directors were guilty of mismanagement and waste. More specifically, it was alleged (1) that the directors had improperly and unlawfully authorized the payment of large sums to certain officers and directors in the form of bonuses or gifts; and (2) that two of the directors of the Brandon Corporation were partners in the firm of Woodward, Baldwin & Co., the exclusive selling agent for the Brandon Corporation, and that the directors had improperly authorized the payment of unnecessary and excessive commissions to said firm. The prayer is for judgment against the directors in the sum of $1,000,000.00 and that pending final deter-

mination of the action, the corporation be restrained from paying any further commissions to Woodward, Baldwin & Co.

An effort to acquire jurisdiction of the non-resident defendants was unsuccessful. *Johnson v. Baldwin,* 214 S. C. 545, 53 S. E. (2d) 785. An answer was duly filed on July 30, 1946, by the corporation and certain of the resident directors who had been served with process. After denying the charges of mismanagement, the defendants alleged (1) that all salaries and bonuses paid by the corporation to its officers were moderate and proper; (2) that the commissions paid to the selling agent were necessary and reasonable; (3) that a derivative action similar to that now before us was brought by a stockholder in 1944, wherein substantially the same charges of mismanagement were made, and that said action resulted in a decree of the court, consented to by all parties, adjudicating all matters involved in the instant action and approving the contract under which the corporation was doing business with Woodward, Baldin & Co.; (4) and that the complaint now made by the plaintiff had never been brought to the attention of the directors or officers of the corporation and no redress had ever been sought within the corporation.

Within due time the plaintiff filed a reply denying that the issues now raised were adjudicated in the stockholders' action brought in 1944.

On February 24, 1947, the defendants who had been served with process gave notice of a motion for an order of reference, but the case has never been brought up for hearing.

In November, 1949, under the statute authorizing and providing for the merger or consolidation of corporations, Sections 7757 to 7763, inclusive, of the 1942 Code, the Brandon Corporation, Belton Mills and the Abney Mills, all South Carolina textile corporations, pursuant to appropriate action by the board of directors and stockholders of each of the three corporations, were merged into one corporation

known as the Abney Mills. (The record does not disclose whether the resultant corporation was one of the consolidated corporations or a new corporation.) The plaintiff voted against the merger and thereafter within due time demanded the payment of the value of her stock in the Brandon Corporation. On January 7, 1950, she gave notice to the Abney Mills that she would move before the Resident Judge of the Eighth Circuit on January 11, 1950, for the appointment of appraisers under Section 7759. To this notice was attached a petition for the appointment of appraisers. There having been no hearing on this petition, the Abney Mills, on March 1, 1950, gave notice of a motion before Judge Martin, then presiding in the Eighth Circuit, on March 8, 1950, for a hearing and disposition of the plaintiff's petition. Counsel for the plaintiff and the Abney Mills duly appeared before Judge Martin pursuant to such notice. This hearing resulted in an order by Judge Martin dated March 8, 1950, in which, after reciting that the plaintiff on December 12, 1949, had demanded in writing the payment of the value of her stock, that by petition on January 7, 1950, she had asked for the appointment of appraisers to ascertain the value of said stock, and that the attorneys for the plaintiff had that day requested that the petition for the appointment of appraisers be dismissed, it was ordered that the petition for the appointment of appraisers be dismissed, "with prejudice to this proceeding, but without prejudice to the rights of any party in any other suit or proceeding."

Notice of the filing of the above order was duly served on March 8, 1950. Immediately thereafter there was tendered in cash to plaintiff's attorneys an amount claimed by the defendants to represent the value of her stock, this being the same amount which the Abney Mills had previously offered to pay to the plaintiff when she demanded the value of her stock. The tender was refused.

On March 13, 1950, after the adjournment of the Court of Common Pleas at Greenwood, the attorneys for the plaintiff served notice upon the attorneys for the Abney Mills

that they would move before Judge Martin, at Greenville, on March 17, 1950, to vacate the order signed by him at Greenwood on March 8th on the ground that it did not conform to the agreement under which the plaintiff had consented to same, in that it was the understanding of plaintiff's attorneys that all proceedings instituted by her under Section 7759 of the Code were to be ordered abandoned, including the notice by her demanding the payment of the value of her stock in the Brandon Corporation. The notice further stated that upon said order being vacated, plaintiff's attorneys would move to be allowed to abandon and withdraw ₅all proceedings instituted by plaintiff under Section 7759 of the Code, including the notice of demand for the payment of the value of her stock. The above notice by plaintiff to vacate the order of March 8th was not brought up for hearing before Judge Martin, nor marked "heard" by him while presiding in the Eighth Circuit, nor did counsel agree that it be heard thereafter.

Meanwhile, on March 6, 1950, the defendants in the instant action gave notice that they would move before Judge Martin on March 11, 1950, for an order dismissing the complaint and terminating the action upon the ground that plaintiff had ceased to be a stockholder in the Brandon Corporation and was no longer entitled to prosecute the action. Attached to said notice was an affidavit by one of defendants' counsel setting out the merger proceedings heretofore mentioned and stating that upon making demand for the value of her stock, plaintiff ceased to be a stockholder in the Brandon Corporation. At the hearing of this motion before Judge Martin, his attention was called by plaintiff's attorneys to their motion to vacate the order signed by him at Greenwood on March 8, 1950. The Court then stated in substance that this order was not material on the question of whether the action should be dismissed and that the crucial point was the effect of the demand which the plaintiff had made for the value of her stock. The motion was taken under advisement and thereafter on March 31, 1951, an order was

filed granting the motion and dismissing the action. This appeal followed.

The contentions of the plaintiff may be briefly summarized as follows: (1) That the motion to dismiss the action should not have been entertained while there was pending a motion by plaintiff to vacate the order of March 8th and a motion by her to be allowed to withdraw the demand for the cash value of her stock, it being claimed that if these motions were granted, plaintiff "would again become a shareholder." (2) That a demand by a stockholder under Section 7759 for the value of his stock is revocable and may be withdrawn, at least where such withdrawal would not result in prejudice to the corporation involved. (3) That the action brought by plaintiff is a derivative one for the benefit of the corporation which would not be abated even if plaintiff ceased to be a stockholder, and that such a cause of action is among those preserved under the terms of Sections 7760 and 7761 of the 1942 Code. (4) That the rights of the plaintiff cannot be adequately protected under Section 7759 providing for the appraisal and payment of the value of the stock of a dissenting stockholder, it being argued that the value of the plaintiff's stock cannot be properly determined until the result of the instant case is known.

Defendants take the preliminary position that questions 2 and 3 above mentioned were not raised in the Court below and, therefore, are not properly before this Court. On the merits they contend, and the Court below so held: (1) That the motion by plaintiff to vacate the order of March 8th was abandoned by her and, if not abandoned, its determination could have no bearing on the motion to dismiss, it being asserted that it was the demand in writing by the plaintiff for the payment of the cash value of her stock which terminated her status as a stockholder and that the withdrawal of her petition for the appointment of appraisers would not restore such status. (2) That under the merger statute, a dissenting stockholder may elect either to accept the terms of the merger agreement or demand the cash

value of his stock but when he elects to take the value of his stock, such election is irrevocable. (3) That an action of this kind can only be prosecuted by a stockholder and that plaintiff ceased to be a stockholder under the statute upon demanding the value of her stock. (4) That although the cause of action stated in plaintiff's complaint did not abate by reason of the merger, it can no longer be prosecuted by one who has ceased to be a stockholder. (5) That Section 7759 affords plaintiff an adequate remedy in that any cause of action for mismangement on the part of the directors is an asset of the corporation which may be evaluated by the appraisers or the court in determining the value of her stock.

It is essential to a proper determination of the questions presented for decision that we inquire into the nature of the cause of action stated in the plaintiff's complaint. It is purely a derivative one, brought by the plaintiff in the right of the corporation. The liability of directors for loss to a corporation due to their mismanagement is an asset of the corporation and any recovery on such a cause of action belongs solely to the corporation. The stockholder in an action of this kind is only a nominal plaintiff, the corporation being the real party in interest. *Gary v. Matthews,* 148 S. C. 125, 145 S. E. 702; *Stewart v. Ficken,* 151 S. C. 424, 149 S. E. 164. In speaking of causes of action of the nature involved in the instant case, it was stated in *Meyer v. Fleming,* 327 U. S. 161, 66 S. Ct. 382, 386, 90 L. Ed. 595: "They are one of the remedies which equity designed for those situations where the management through fraud, neglect of duty or other cause declines to take the proper and necessary steps to assert the rights which the corporation has. The stockholders are then allowed to take the initiative and institute the suit which the management should have started had it performed its duty."

The right of a stockholder to maintain a derivative action against the directors of a corporation "inheres in and attaches to his ownership of its stock and does not exist apart from such ownership." 19 C. J. S., Corpora-

tions, § 824, page 228. It is a right which depends on status. If there is a loss of status, the action abates so far as the stockholder bringing the action is concerned, although the cause of action itself survives. *Kehaya v. Axton*, D. C., 32 F. Supp. 266. Accordingly, it has been held that where such a derivative action is instituted by preferred stockholders and thereafter the preferred stock is retired, the plaintiffs have no further standing, whether the action is abated or not. *Hayman v. Morris, Sup.*, 46 N. Y. S. (2d) 482. Cf. *Kantor v. Stendig*, 190 Misc. 861, 76 N. Y. S. (2d) 284. Although several of the intermediate appellate courts of New York have held that an action by a director of a corporation against the other directors for negligence and waste is not abated by the fact that subsequently thereto the plaintiff ceases to be a director (see 1 C. J. S., Abatement and Revival, § 110(a) and cases cited), these decisions have been criticised and in *Kehaya v. Axton, supra*, 32 F. Supp. at page 268, the Court expressly declined to follow them. It was there held that where **a** director instituted an action against the other directors of a corporation for negligence and waste, he could not continue to maintain the action after he ceased to be a director. In reaching this conclusion, the Court said:

"If he is ousted as a director he no longer represents the corporation, and the only role which he can thereafter assume is that of a kind of self-appointed *dominus litis*, without interest, present or potential, in his subject matter, which is an anomalous situation involving gratuitous inquisition into the business of another, and fraught, it seems to me, with the dangerous possibilities always inherent in irresponsibility.

\* \* \*

"To hold that if a director, who has sued, loses his status as director further maintenance of the suit by him is barred, does not mean that the cause of action, if there is one, has disappeared. It merely means that that particular plaintiff

cannot further pursue it. Another, with the proper status, must start a new action if he be so advised."

It is our conclusion that the right of the plaintiff to continue to prosecute this action depends upon her retaining her status as a stockholder and if she ceased to be a stockholder, the cause of action abated so far as she is concerned. There would be no one left in court with the capacity to continue the litigation. She cannot prosecute an action as a member of a class to which she does not belong. Of course, as previously pointed out and apparently conceded by the defendants, the cause of action itself would not be extinguished.

We shall now proceed to inquire whether the plaintiff ceased to be a stockholder and, if so, whether she can have her status restored. The determination of this question necessitates a rather extensive review of the terms of our statute authorizing and providing for the merger or consolidation of corporations.

Section 7757 of the 1942 Code authorizes the consolidation of two or more corporations "into a single corporation which may be either one of said consolidated corporations or a new corporation to be formed by means of such consolidation." It provides that the terms and conditions of the proposed consolidation shall be fixed and determined by a majority of the directors of each corporation desiring to consolidate, after which said agreement must be submitted to the stockholders of each corporation at a meeting called for that purpose, the notice of the time, place and object of such meeting to be published in a newspaper once a week for four successive weeks and copy of said notice mailed to each stockholder at least twenty days prior to the date of such meeting. If the votes of the stockholders of each corporation representing a majority of the outstanding shares of stock are in favor of the adoption of the agreement, such agreement must then be filed in the office of the Secretary of State and "shall thereupon be taken and deemed to be the agreement and act of the consolidation of the said corpo-

ration". A copy of such agreement is required to be recorded in the county in which the principal office of the consolidated corporation is established and also in those counties in which the respective corporations so consolidating shall have their original charters recorded.

Section 7758 provides that when the agreement is signed and filed as required by Section 7757, "the separate existence of the constitutent corporations shall cease, and the consolidating corporations shall become a single corporation in accordance with the said agreement," possessing all the rights and privileges and becoming subject to all the restrictions and duties of each of the corporations so consolidated. All property and other assets of the constituent corporations become vested in the consolidated corporation, which assumes all their debts and liabilities. It is further provided in this section "that all rights of creditors and all liens upon the property of either of said former corporations shall be preserved unimpaired".

The rights of dissenting stockholders are fixed by Section 7759, which is as follows: "If any stockholder entitled to vote in either corporation consolidating as aforesaid, shall vote against such consolidation, \* \* \* and if such dissenting or objecting stockholder shall within twenty days after the agreement of consolidation has been filed and recorded as aforesaid, demand in writing from the consolidated corporation payment of his stock, such consolidated corporation shall within thirty days thereafter pay to him the value of the stock at the date of the consolidation; and in case of disagreement as to the value thereof, it shall be lawful for any such stockholder, within thirty days after he has made demand in writing as aforesaid, and upon reasonable notice to the consolidated corporation, to apply by petition to the judge of the court of common pleas of the county in which the principal office of the consolidated corporation is, or is to be, established, to appoint three appraisers to appraise the value of his stock. The award of the appraisers or of a majority of them, if not opposed and

excepted to in writing within ten days after the same shall have been filed in the office of the clerk of court as hereinafter provided, shall be confirmed by the court and when confirmed shall be final and conclusive. If objection be made and exceptions filed, as aforesaid, the cause shall be entered upon calendar No. 1 of the court of common pleas for trial by said court and a jury, upon the issues raised by the exceptions, and said cause shall have priority over all other civil actions or proceedings except as having been given priority by law. The court shall assess against the consolidated corporation the costs of said proceedings, including a reasonable attorney's fee to the stockholder and a reasonable fee to the appraisers, as it shall deem equitable, and any party shall have the right to appeal to the Supreme Court, according to existing law and procedure. *On the making of said demand in writing, as aforesaid, any such stockholder shall cease to be a stockholder in said constituent company and shall have no rights with respect to such stock execpt the right to receive payment therefor, as aforesaid,* and upon payment of the agreed value of the stock or of the value of the stock determined by appraisal or judgment, as aforesaid, said stockholder shall transfer his stock to the consolidated corporation; and if the consolidated corporation shall fail to pay the amount of said judgment within ten days after the same shall become final, said judgment may be collected and enforced in the manner prescribed by law for the enforcement of other judgments. Each stockholder in either of the constituent corporations at the time the consolidation becomes effective, who is entitled to vote and who does not vote against the consolidation and each stockholder in each of the constituent corporations at the time the consolidation becomes effective, who is not entitled to vote and who does not object thereto in writing, as aforesaid, shall cease to be a stockholder in such constituent corporation and shall be deemed to have assented to the consolidation together with the stockholders voting in favor thereof in

the manner and on the terms specified in the agreement of consolidation.   *   *   *" (Italics ours.)

The only other sections of the statute pertinent to the issues involved on this appeal are as follows:

"7760. Any action or proceeding pending by or against either of the corporations consolidated may be prosecuted to judgment, as if such consolidation had not taken place or the new corporation may be substituted in its place."

"7761. The liability of corporations now or hereafter existing under the laws of this State, or of the stockholders or officers thereof, or the rights or remedies of the creditors thereof or of persons doing or transacting business therewith, shall not in any way be impaired or diminished by the consolidation of two or more such corporations under the provisions hereof."

Statutes similar to the one above described have been enacted in most, if not all, of the states. While the general objective is the same, there is considerable variation in phraseology and methods of procedure. Generally speaking, they seek to correct the injustice to the bulk of the stockholders from want of power in a corporation to merge with another corporation or sell its assets on terms deemed advantageous by the holders of a large majority of the stock. Unanimous consent required at common law empowered a dissenting stockholder to compel the majority to buy him out on his own terms in order to effect a merger or consolidation. In seeking to remedy the foregoing condition, however, it was found necessary to protect the minority, if they regarded the sale as opposed to their interests, and allow them to retire from the enterprise upon the payment to them of the value of their shares. The remedy of appraisal and payment was intended to afford fair and just compensation to the dissenters and at the same time provide a method by which their objections could be fairly composed so as to enable the consolidation to proceed.

It is well established that a statute of this nature enters into and forms a part of the contract between the corporation and the stockholders. "Everyone who buys shares in a corporation is charged with notice of the statutory provisions as to merger with another corporation." *Hubbard v. Jones & Laughlin Steel Corporation,* D. C., 42 F. Supp. 432, 435. In considering merger statutes, it is well to keep in mind that "there is no underlying 'natural right' of a shareholder in a corporation to follow his investment into a consolidated corporation." *Beechwood Securities Corporation v. Associated Oil Co.,* 9 Cir., 104 F. (2d) 537, 540.

It is generally held that a dissenting stockholder is put to an election by a statute of this kind. *Cole v. National Cash Credit Association,* 18 Del. Ch. 47, 156 A. 183; *Stephenson v. Commonwealth & Southern Corporation,* 19 Del. Ch. 447, 168 A. 211; *Anderson v. International Minerals & Chemical Corporation,* 295 N. Y. 343, 67 N. E. (2d) 573. In this connection, also see *Wall v. Anaconda Copper Mining Co.,* D. C., 216 F. 242. There are sound reasons for this view. The proper financing of the corporation may demand quick action. The management is entitled to know how many of the stockholders dissent from the proposed merger and thus become potential demandants of cash. The requirement as to election is reasonable. Under our statute the stockholder has ample time to determine whether he wishes to vote for or against the merger. If he votes against the merger, it does not follow that he must demand payment of the cash value of his stock. After being outvoted in the election, he has twenty days after the consolidation or merger agreement is filed and recorded to determine whether he will demand the payment of the value of his stock or go along with the consenting stockholders and take under the merger agreement. Of course, as pointed out in *Cole v. National Cash Credit Association, supra,* there may be circumstances under which the duty to make an election does not arise. For instance, if the merger is not authorized by law or if brought about through fraudulent conduct,

the dissenting stockholder has the right to go in a court of equity and seek an injunction against consummation of the merger.

With the foregoing principles in mind, we now revert to the facts of the instant case. No contention is made by plaintiff that the merger agreement was not adopted in the manner prescribed by statute. There is no claim of fraud. It is true that an action was brought by plaintiff's son to set aside the merger. *Johnson v. Abney Mills,* 219 S. C. 231, 64 S. E. (2d) 641. But no question of this kind is raised in the instant case. We may assume on this appeal that the merger has been properly effected. Plaintiff voted against it at the stockholders' meeting. Thereafter, within the time required by statute, she demanded payment for her stock and petitioned the court for the appointment of appraisers. There is no showing that she was induced to make this demand through fraudulent concealment or false representations as to the facts. Indeed, it is not contended that she did so through mistake. Under these circumstances we think she was bound by her election and may not now withdraw her demand and restore her status as a stockholder. The statute admits of no other reasonable construction and to hold otherwise would lead to great uncertainty and much confusion.

We have given due consideration to the case of *Commercial Banking & Trust Co. v. Tenants Realty Co.,* 37 Ohio App. 566, 175 N. E. 36, cited by plaintiff. It was there held that a withdrawal by a dissenting stockholder of a demand for the cash value of his stock, when done with the consent of the corporation, restored all the rights of the stockholder. The fact that the withdrawal was with the consent of the corporation furnishes a vital distinction between that case and the one now under consideration.

We agree with the Court below that the pendency of the motion to vacate the order signed by Judge Martin on March 8, 1950, has no bearing on the question of whether the

plaintiff may withdraw the demand made by her for the value of her stock. It is said that this order was issued through misunderstanding or mistake. Assuming that it was and that plaintiff is entitled to have same vacated under Section 495 of the 1942 Code, such action would not destroy the effect of the demand for the payment of her stock previously made by the plaintiff, which is the determining factor.

Having concluded that the plaintiff may not retract the demand which she has made for the payment of the stock, we proceed to inquire as to the effect of this demand. The question is answered by the following provision found in Section 7759: "On the making of said demand in writing, as aforesaid, any such stockholder shall cease to be a stockholder in said constituent company and shall have no rights with respect to such stock except the right to receive payment therefor". This language is clear and unambiguous. We are not at liberty to enlarge or modify it. Under the express terms of the statute, plaintiff ceased to be a stockholder in the Brandon Corporation upon making demand for the payment of her stock. Under the statutes of some of the states, the dissenting stockholder does not lose his rights as a stockholder until he has received the ascertained value of his stock. Under our statute governing the sale of the major assets of a corporation, the interest of the dissenting stockholder in his stock does not cease until he has been paid its value or provision made for payment. See Section 7706 of the 1942 Code. But the terms of the statute under consideration are quite different.

Having ceased to be a stockholder in the Brandon Corporation, plaintiff under the authorities reviewed earlier in this opinion has no standing to continue this action against the directors for mismanagement and waste.

Plaintiff strenuously argues that a different conclusion should be reached under the case of *Cole v. Wells*, 224 Mass. 504, 113 N. E. 189, 191. That case involved an attempt to sell the assets of a corporation under a statute permitting

a stockholder voting against the sale to demand within thirty days payment for his stock. A dissenting stockholder, who had demanded payment of his stock, brought an action against the directors for an accounting and to set aside the transfer as invalid. Defendants contended that the plaintiff, had made an irrevocable election to demand the value of his stock which precluded him from bringing the action. The Court held that the plaintiff was not bound by his demand because it was made in ignorance of the fraud which the directors, who were also the majority stockholders, had perpetrated upon him and the corporation, and that even if the plaintiff could be deemed to have elected, "he remained a stockholder until payment by the corporation for his stock at the agreed or awarded price, with the right if necessary to maintain a minority stockholder's bill for an accounting and the restoration to the corporation of the unlawful gains and profits obtained by the defendants while acting in a fiduciary capacity." We think that case presented a different factual situation. In the instant case plaintiff made her demand with full knowledge of the facts and under our statute plaintiff ceased to be a stockholder when she made her demand.

Much stress was laid by counsel for the plaintiff in oral argument upon the fact that throughout Section 7759 the dissenting stockholder is referred to as a "stockholder", from which it is argued that it was the legislative intent that the dissenter should possess all the rights of a stockholder until he has received payment for his stock. We are unable to see any force in this argument. After a dissenting stockholder has made demand for the payment of his stock, there is a transitory period when he is such in name only with none of the ordinary incidents or rights of a stockholder.

It is claimed that the cause of action stated in the complaint is preserved by Sections 7760 and 7761 heretofore quoted. So far as Section 7760 is concerned, we have not held that the plaintiff's cause of action.

if any, has disappeared but only that it cannot any longer be prosecuted by her. The derivative right set forth in the complaint in the instant case is not that of a creditor of a corporation whose rights are preserved under Section 7761. *Arnstein v. Bethlehem Steel Corporation,* D. C., 18 F. Supp. 916. Neither of these sections affords any basis for the continuance of this case by the plaintiff.

Finally, the argument is made that Section 7759 does not furnish an adequate remedy for the fair determination of the value of the plaintiff's stock. Since it appears to be conceded, and properly so we think, that under the procedure laid down by Section 7759, any right of the Brandon Corporation sought to be enforced by plaintiff may be considered as an asset in evaluating plaintiff's stock, there would seem to be little, if any, basis for the claim that she cannot get proper compensation under this statute. But be that as it may, the question as to whether the remedy afforded to a dissenting stockholder under Section 7759 is exclusive, upon which there is so much conflict of authority, see 13 Am. Jur., Corporations, Section 1230; *Adams v. United States Distributing Corporation,* 184 Va. 134, 34 S. E. (2d) 244, is a question that is not properly before us. The only issue now before the Court is whether the instant action should be dismissed on account of the plaintiff's loss of status. We have so held.

There are several other questions raised by defendants which we find it unnecessary to pass upon.

The order appealed from is affirmed, without prejudice, however, to the right of the plaintiff to take such action as she may be advised to have determined and to recover the value of her stock.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.