S. Harold AUSTELL, Thomas B. Austell, Doris N. Austell, Norman D. Blair, Daniel A. Blair, Leon I. Chidester, Jr., Shelby M. Freeman, Roger B. Kerns, E.H. Lowder & Sons, Inc., James D. McDuffie, Mary A. Moss, John B. Pierce, Norma C. Pierce, Arnold W. Smith, Dollie C. Smith, H. Kent Sowers, William L. Sowers, Ray L. White, Lela F. White, and Joseph M. Wright, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

O. Bruton SMITH, Lone Star Ford, Inc., Charles A. West, Charlotte Motor Speedway, Inc. (the successor corporation), H.A. Wheeler, Jr., T.E. Efird, Edwin D. Griffith, and Ivan Tufty, Defendants,

v.

CHARLOTTE MOTOR SPEEDWAY, INC., (the merged corporation, Nominal Defendant and Beneficially Interested Party).

No. C–C–85–0689–P.

United States District Court, W.D. North Carolina, Charlotte Division.

May 6, 1986.

A. Ward McKeithen, Dan T. Coenen, David C. Wright, III, Robinson, Bradshaw & Hinson, Douglas A. Brackett, R. Craig Miller, Jr., Dozier, Brackett, Miller, Pollard, and Murphy, Charlotte, N.C., for plaintiffs.

Willie E. Poe, Fred T. Lowrance, David N. Allen, Parker, Poe, Thompson, Bernstein, Gage & Preston, H. Morris Caddell, Jr., Bailey, Patterson, Caddell and Bailey, Charlotte, N.C., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER was heard before the undersigned on March 25, 1986 in Charlotte, North Carolina on the Defendants' Motion to dismiss or stay this action; the Plaintiffs' Motion for class certification; the Motions of five former minority shareholders of Charlotte Motor Speedway, Inc. for intervention; the Defendants' Objec-

tions and Motion for a Protective Order as to the Plaintiffs' First Request for the Production of Documents and First Set of Interrogatories; and the Plaintiffs' Motion to compel the Defendants to answer the Plaintiffs' First Set of Interrogatories and First Request for the Production of Documents.

The Plaintiffs and Proposed Intervenors were represented by A. Ward McKeithen, Dan T. Coenan, David C. Wright, III, Douglas A. Brackett, and R. Craig Miller, Jr., Attorneys at Law. Defendants O. Bruton Smith, Lone Star Ford, Inc., Charles A. West, and Charlotte Motor Speedway, Inc. (the successor corporation) were represented by William E. Poe, Fred T. Lowrance, David N. Allen, and H.C. Strickland, Attorneys at Law. Defendants H.A. Wheeler, T.E. Efird, Edwin D. Griffith, Ivan Tufty, and Charlotte Motor Speedway, Inc. (the merged corporation) were represented by Allen A. Bailey and H. Morris Caddell, Jr.

This case arises out of a series of corporate events which culminated in the merger of Charlotte Motor Speedway, Inc. (hereinafter "Speedway I") into a subsidiary of Lone Star Ford, Inc. (hereinafter "Speedway II"). Before the merger, Defendant O. Bruton Smith was Chairman of the Board, Chief Executive Officer, and beneficial owner of a majority of the shares of Speedway I. Lone Star Ford, Inc. directly owned 79.64% of the outstanding shares of Speedway I as of the date of the merger agreement; Smith allegedly owned 91.82% of the shares of Lone Star as of that date. The remaining individual Defendants served as the directors and/or officers of Speedway I and continued to serve in the same capacities for Speedway II after the merger approved by them had been effected.

The named Plaintiffs were all minority shareholders of Speedway I who were required to relinquish their ownership interests in the corporation pursuant to a merger agreement approved by Speedway I's Board of Directors on July 19, 1985 and by the shareholders at a special meeting on September 26, 1985. The Plaintiffs allege that the merger was "sold" to the minority shareholders by way of misleading proxy materials. The named Plaintiffs dissented from the merger at the special meeting of the shareholders pursuant to N.C.Gen.Stat. § 55–113. The merger "squeezed out" the interests of all the minority shareholders by converting each outstanding minority share into the right to receive $300.00 per share or its equivalent in United States Treasury certificates.

On December 18, 1985, the named Plaintiffs filed (a) dissent and appraisal petitions in the Superior Court of the State of North Carolina, and (b) the class action Complaint in this Court. In their federal action, the Plaintiffs allege that the Defendants engaged in a continuing scheme spanning a number of years to defraud Speedway I's minority shareholders, to suppress artificially the value of the minority shares of Speedway I, and ultimately to compel the minority shareholders to surrender their shares for only a small portion of the true value of the shares. They allege that the Defendants violated Sections 10, 13, and 14 of the Securities Exchange Act of 1934 by distributing to minority shareholders a proxy statement containing misleading statements and omissions; violated the Racketeering Influenced and Corrupt Organizations Act ("RICO"); committed unfair and deceptive acts in violation of N.C.Gen. Stat. § 75–1.1 and securities fraud pursuant to N.C.Gen.Stat. § 7A–56; and breached their fiduciary duties to the minority shareholders under state law. The Plaintiffs seek for themselves and the rest of the 640 minority shareholders "squeezed out" by the merger compensatory damages based on the "true value" of the shares they were required to surrender, punitive damages based on the Defendants' alleged willful oppression of the minority shareholders, and treble damages based on the Defendants' alleged continuing pattern of racketeering activity under RICO.

All Defendants have moved to dismiss this federal action based on the pendency of the dissent and appraisal petitions filed by the named Plaintiffs in state court pursuant to N.C.Gen.Stat. § 55–113. In the

alternative, the Defendants request a stay of the proceedings in this Court until the appraisal procedure set forth in § 55–113 is completed.

## MOTION TO DISMISS

■ The Defendants contend that the relief the Plaintiffs are seeking in federal court (*i.e.*, the true value of their shares) is identical to the relief requested by them in the state court appraisal proceedings. They assert that the Plaintiffs elected their remedy when they chose to take advantage of the statutory scheme for acquiring the fair value of their shares as set forth in N.C.Gen.Stat. § 55–113; therefore, they are barred from seeking the same remedy in a separate action. Indeed, the Defendants maintain that the appraisal remedy should be held to be the Plaintiffs' exclusive financial remedy, thus barring any other action.

The Plaintiffs allege that the relief they are seeking in the state court actions is vastly different from the relief they are seeking in federal court. Specifically, they allege that their dissent and appraisal petitions invoke only the narrow "no fault" remedy provided by N.C.Gen.Stat. § 55–113, which allows them to exchange their shares for their "fair value" as determined by three appraisers appointed by the clerk of Superior Court. N.C.Gen.Stat. § 55–113(e). In contrast, their exclusively federal claims and pendent fault-based state claims authorize recovery far beyond that contemplated by the appraisal petitions— *i.e.*, treble damages, punitive damages, and compensatory damages based on the "true value" of their shares, which may be more than the "fair value" as determined by the state appraisers.

The Plaintiffs contend that the plain language of N.C.Gen.Stat. § 55–113 refutes the Defendants' argument that North Carolina's statutory scheme for appraisal rights should be held to bar the Plaintiffs from seeking any other form of financial relief. The Court agrees. Section 55–113(b) expressly states:

*In addition to any other right he may have in law or equity,* the shareholder giving [the required] notice shall be entitled, if and when the ... merger ... is effected, to be paid by the corporation the fair value of his shares....

N.C.Gen.Stat. § 55–113(b) (emphasis added). The emphasized language clearly shows that the Legislature intended to increase the remedies available to a dissenting shareholder, not supplant any other remedies that shareholder might have. Thus, the Court declines to hold that the statutory appraisal remedy constitutes the Plaintiff's exclusive financial remedy. *Accord Umstead v. Durham Hosiery Mills, Inc.,* 578 F.Supp. 342, 345 (M.D.N.C.1984) ("the Court finds that N.C.Gen.Stat. § 55–113 grants Plaintiffs an appraisal remedy and that this remedy is not exclusive").

■ The Defendants argue that even if the Court should find that the statutory appraisal remedy is not the Plaintiffs' exclusive remedy, their decision to pursue that remedy constitutes an election of remedies which bars them from asserting their claims in federal court. In support of this argument, the Defendants cite the following language from a Maryland District Court case in which a shareholder sought relief based on his appraisal rights and breach of fiduciary duty:

[Maryland's] statutory provisions [for appraisal proceedings] suggest that, in the usual case, resort by a dissenting shareholder to the appraisal remedy constitutes a statutory election of remedies and bars resort to remedies otherwise available under common law. Well reasoned opinions from other jurisdictions with fairly similar appraisal statutes have so held. *See, e.g., Dofflemyer v. W.F. Hall Printing Co.,* 432 A.2d 1198, 1200–02 (Del.1981); *Johnson v. Baldwin,* 221 S.C. 141, 69 S.E.2d 585, 591–92 (S.C. 1952). *Compare Farnsworth v. Massey,* 365 S.W.2d 1, 5–6 (Tex.1963) (noting but not deciding the question.) *See also Breed v. Barton,* 54 N.Y.2d 82, [444 N.Y. S.2d 609] 429 N.E.2d 128, 129–31 (1981).

*Twenty Seven Trust v. Realty Growth Investors*, 533 F.Supp. 1028, 1038 (D.Md. 1982).

In *Twenty Seven Trust*, however, the Court determined that the circumstances of that case warranted a departure from any general rule of election of remedies that might be based on the statutory provisions for appraisal. Among other things, the case involved "serious allegations of breach of fiduciary duty, which alone may be a sufficient reason for an exception to a rule of election." *Id.* at 1039.

The serious allegations of breach of fiduciary duty and securities fraud involved in the present case combined with the particular language of N.C.Gen.Stat. § 55–113(b) weigh against finding that the Plaintiffs are barred from pursuing their claims in federal court by their decision to pursue their statutory appraisal rights. As noted above, the North Carolina statute expressly provides that the shareholder's appraisal remedy is *"[i]n addition to* any other right he may have in law or equity." N.C.Gen. Stat. § 55–113(b) (emphasis added).

The Fourth Circuit has indicated that a party's prosecution of a claim for relief created by a state statute does not constitute a binding election of remedies which will preclude him from pursuing federal claims for relief based on the same actions where there is no statutory provision to the contrary and the claims for relief are not "theoretically irreconcilable." In *Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Compensation Programs*, 583 F.2d 1273 (4th Cir. 1978), *cert. denied*, 440 U.S. 915, 99 S.Ct. 1232, 59 L.Ed.2d 465 (1979), the Court stated:

> [I]n the absence of express legislative declaration to the contrary, the courts have been reluctant to extend this relatively harsh doctrine [*i.e.*, the election of remedies doctrine]. *See Brooks v. United States*, 337 U.S. 49, 53, 69 S.Ct. 918, [920] 93 L.Ed. 1200 (1949); *Friederichsen v. Renard*, 247 U.S. 207, 38 S.Ct. 450, 62 L.Ed. 1075 (1918). In any event, it is inapplicable where, as here, the second remedy which is pursued following an alleged "election" is not theoretically irreconcilable with the first, and does not require a claimant to assume a position inconsistent with that which he took in his initial quest for relief. *United States v. Oregon Lumber Co.*, 260 U.S. 290, 304, 43 S.Ct. 100, [104] 67 L.Ed. 261 (1922) (Brandeis, J., dissenting); *Abdallah v. Abdallah*, 359 F.2d 170 (3 Cir. 1966); 1B Moore's Federal Practice ¶ 0.405[7] (Second edition).

*Id.* at 1277.

In *Newport News* the Court found that the plaintiff's prosecution of a claim under the Virginia workers' compensation statute did not bar him from pursuing a claim for benefits under the Federal Longshoremen's and Harbor Workers' Compensation Act for the same injury. In the present case, there is no express declaration in the state appraisal statute dictating application of an "election of remedies" rule whenever a shareholder chooses to pursue his appraisal rights. In addition, while the remedies sought in the federal action are broader than those sought in the state actions, they do not require the Plaintiffs to assume a position in this Court that is inconsistent with their position in the appraisal proceedings.

Nonetheless, the Defendants argued at the hearing that the present situation can be analogized to the pursuit of inconsistent remedies in a contract situation. The Defendants explained that when a party to a contract believes that he was induced to enter a contract because of misrepresentations by the other party, he may either affirm the contract and sue for damages for a breach of the contract or rescind the contract as being illegally induced and sue the other party for damages based on fraud. It is theoretically irreconcilable for a party to take both positions. The Defendants argue that by choosing to pursue the appraisal procedure, the Plaintiffs essentially affirmed the proxy statement, since the proxy statement set out that procedure as the available remedy for dissenting shareholders. Therefore, the Plaintiffs

should not be allowed also to attack the proxy statement as containing misleading statements and omissions and pursue claims based on securities fraud.

The Court does not agree with the Defendants' analogy. A party's right to sue for damages based on breach of a contract arises by virtue of the existence of that contract. In contrast, the proxy statement did not create the right of the dissenting shareholders in this case to pursue the appraisal remedy; the statute created that right. The Court finds that it is not theoretically irreconcilable for a shareholder who dissents from a merger because he feels the proxy materials are fraudulent to pursue both federal claims based on securities fraud and an appraisal remedy designed to compensate shareholders who feel they have been "cheated" by their corporation.

In light of the foregoing discussion, the Court is of the opinion that the Defendants' Motion to dismiss the Plaintiffs' federal action should be denied.

## MOTION TO STAY

A stay is as much a refusal to exercise federal jurisdiction as a dismissal. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 28, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1983). The present case does not fall within any of the three traditional categories appropriate for abstention by a federal court (*i.e.*, (1) "cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law," *County of Alleghany v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959); *see, e.g., Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); (2) cases involving questions of state law which either are determinative of state policy problems whose importance transcends the significance of the result in the particular action before the federal court, *see, e.g., Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3

L.Ed.2d 1058 (1959), or should be resolved by the state court so that state efforts to establish a coherent policy with respect to matters of substantial public concern will not be disrupted, *see, e.g., Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); and (3) cases in which federal jurisdiction has been invoked to restrain state criminal proceedings which do not involve bad faith or harassment on the part of the prosecutor or a patently invalid state statute, *see, e.g., Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court determined that the case before it did not fall within any of the traditional abstention categories. Nonetheless, it decided that the District Court's dismissal of the federal proceedings in favor of the pending state court proceedings was proper because of "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 817, 96 S.Ct. at 1246 (quoting *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)).

In light of "the absence of weightier considerations of constitutional adjudication and state-federal relations" and the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," however, the Court in *Colorado River* warned that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.* at 818, 96 S.Ct. 1246. The Court explained the factors bearing on the decision whether to refrain from exercising federal jurisdiction for reasons of "wise judicial administration" as follows:

[T]he court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts....

In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. *Only the clearest of justifications will warrant dismissal [or stay].*

*Id.* at 818–19, 96 S.Ct. at 1246–47 (emphasis added; citations omitted).

Applying those factors to the case at bar, the Court is of the opinion that it should not abstain from exercising its jurisdiction while the state court appraisal actions proceed. This case is an *in personam* action and, therefore, will not conflict with the state court's exercise of jurisdiction over the shareholders' stock in the appraisal proceedings at the time of judgment. There is no contention that the federal forum is any less convenient to the parties than the state forum. The order in which jurisdiction was obtained by the state court and this court is not significant, since the actions were filed on the same day. No progress has been made in either court, because motions to stay have been filed in both courts and are both outstanding.

The concern over piecemeal litigation would not be solved by staying this proceeding. A determination by the appraisers of the "fair value" of the stock of the named Plaintiffs would not necessarily resolve the valuation issue in the federal action. As the Second Circuit stated in *Merrit v. Libby, McNeill & Libby*, 533 F.2d 1310, 1314 (2d Cir.1976), the "restrictive theories of valuation [used in state appraisal proceedings] are not binding on federal courts when actual damages are sought for violations of the federal securities laws." *See also Graham v. Exxon Corp.*, 480 F.Supp. 12, 14 (S.D.N.Y.1978) (plaintiff in federal securities fraud case is not collaterally estopped from litigating the issue of the true value of his stock at the time of merger by virtue of a prior Delaware judgment in appraisal proceedings brought by him).

Even if the valuation of the appraisers in the appraisal actions were binding on the named Plaintiffs in the federal action, the federal court eventually would have to act on the Plaintiffs' exclusively federal claims since those claims cannot be asserted in the state court. A stay in essence would relegate the Plaintiffs to state court for fact-finding and then bring them back to federal court to litigate both the federal legal issues and the application of federal law to the facts found in state court. The Third Circuit has held that no valid purpose is served by such an arrangement. *Cotler v. Inter-County Orthopaedic Association, P.A.*, 526 F.2d 537, 542 (3d Cir.1975). The Seventh and Ninth Circuits have found that staying a federal case involving a cause of action over which federal jurisdiction is exclusive constitutes an abuse of discretion. *McGough v. First Arlington National Bank*, 519 F.2d 552, 555 (7th Cir.1975); *Lecor, Inc. v. United States District Court for the Central District of California*, 502 F.2d 104, 106 (9th Cir.1974).

Finally, the Proposed Intervenors and the minority shareholders who did not pursue their appraisal rights will not be bound by judgments in the appraisal actions. *See Lecor, supra*, at 105. Their claims will have to be litigated, whether now or later and whether in this suit or another federal suit depending on the outcome of the Motions to intervene and for class certification.

Under the guidelines of the Supreme Court in *Colorado River*, it does not appear that there are exceptional circumstances in this case to justify a stay based on considerations of "wise judicial administration."

### MOTION FOR CLASS CERTIFICATION

■ The Plaintiffs filed this action on behalf of themselves and all other minority

shareholders who were required to surrender their shares of Speedway I stock pursuant to the September 1985 merger, and have moved for certification of their suit as a class action. To be granted class certification, the Plaintiffs must show that the four prerequisites to a class action under Rule 23(a) of the Federal Rules of Civil Procedure are met and that the suit satisfies the standards for at least one of the three types of class actions enumerated in Federal Rule of Civil Procedure 23(b). The Plaintiffs are seeking class certification pursuant to Rule 23(b)(3).

Rule 23(a) provides that a class action may be brought only if:

(1) the class is so numerous that joinder of all members is impracticable (numerosity);

(2) there are questions of law or fact common to the class (commonality);

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality);

(4) the representative parties will fairly and adequately protect the interest of the class (adequacy of representation).

Fed.R.Civ.P. 23(a). Under Rule 23(b)(3), class certification is appropriate when the prerequisites of Rule 23(a) are met and

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3). The following factors are pertinent to the Court's findings:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the claims in the particular forum; and

(D) the difficulties likely to be encountered in the management of a class action.

*Id.*

The proposed class in this case is comprised of approximately 640 shareholders; joinder of that many shareholders is undoubtedly impracticable. Thus, the numerosity prerequisite of Rule 23(a)(1) is met.

All members of the class received the proxy materials that allegedly contained misleading statements and omissions, and they were all "squeezed out" by the merger. Therefore, the claims raised by the Complaint involve questions of law and fact common to the class.

The only major difference between the named Plaintiffs in this case and the class members they seek to represent is the fact that the Plaintiffs dissented from the merger and filed appraisal petitions while the vast majority of the other class members did not. The Defendants contend that there are a number of defenses which can be asserted against the named. Plaintiffs but not against the other class members based on the Plaintiffs' dissent from the merger and vice versa. They, therefore, argue that the claims and defenses of the Plaintiffs are not "typical" of the class, that the Plaintiffs cannot adequately protect the interests of the class since they will have to contend with defenses unique to them, and that questions of law and fact common to members of the class do not predominate over questions affecting only individual members.

The Court notes that complete identity among all members of the class as to all questions of law and fact or all claims and defenses is not required for the certification of a class action. "A rule requiring complete coextensivity of interests would ... seriously impair the effectiveness of Rule 23." *In re Caesars Palace Securities Litigation,* 360 F.Supp. 366, 397 (S.D.N.Y. 1973). Thus, the fact that the Defendants may have certain defenses against some

members of the class and not others is not reason enough in itself to deny class certification. Indeed, a class certification order under Federal Rule of Civil Procedure 23 may be conditional and may be altered or amended before a decision on the merits. Therefore, if specific difficulties in the claims of individual members of the class should arise during the course of the litigation, the Court has the authority to take whatever action may be appropriate, including the designation of subclasses or the denial of individual recovery, to assure the commonality of the class. Fed.R.Civ.P. 23(c), (d).

Even though the named Plaintiffs filed appraisal petitions in state court while most class members did not, their claims in the federal action are typical of the claims of the class since they are based on the same transaction. They should adequately represent the claims of the class since those claims are also their own. Their interests certainly do not conflict with those of the unnamed class members. In addition, if the Proposed Intervenors are allowed to join the named Plaintiffs, the class will be even better represented since most of them did not file appraisal petitions and are, therefore, in the same position as most of the class members.

The Court finds that the prerequisites of Rule 23(a) are satisfied in this case. The Court further finds that the questions of law or fact common to the class predominate over any questions affecting only individual members. Each class member received the same standardized proxy materials and all the claims arise out of the same transaction. The resolution in one action of the common questions relating to the existence, character, and materiality of the alleged misrepresentations and omissions in the proxy materials and to the alleged fraudulent scheme is the most logical, fair, and efficient manner in which to proceed. If class certification is not allowed, the courts may be faced with a multiplicity of suits all concerning the same proxy statement, merger, and alleged scheme to defraud. To require each class member to bear the expense of litigation individually would be senseless. Thus, the Court finds that this suit may be conditionally certified as a class action under Rule 23(b)(3).

## MOTIONS TO INTERVENE

■ Edward P. Gillen, General Bonded Warehouses, Inc., Charles T. Akre, Jr., Edwin P. Latimer, and Kemp R. Dunaway have moved to intervene in this action as named plaintiffs pursuant to Rule 24(b) of the Federal Rules of Civil Procedure. That rule provides:

> Upon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b)(2). Like the Plaintiffs who originally brought this action, the Proposed Intervenors were minority shareholders of Speedway I who were required to relinquish their ownership interests in the corporation pursuant to the September 1985 merger. One of the Proposed Intervenors has filed an appraisal petition in state court. Like the vast majority of the class members, however, the other four Proposed Intervenors failed to perfect their appraisal rights.

The Proposed Intervenors propose to file complaints asserting the same claims as those raised in the main action. Indeed, the allegations in the Proposed Intervention Complaints are identical to the allegations in the Complaint already filed except for paragraph 2, which merely identifies the Proposed Intervenors. Thus, the Proposed Intervenors' claims and the main action clearly have questions of law and fact in common.

Since the Proposed Intervenors would not be adding any new claims or allegations to the action and since they are represented by the same counsel as the Plaintiffs in the main action, intervention by these shareholders would not unduly delay

or prejudice the rights of the original parties to the action. Indeed, allowing intervention by the Proposed Intervenors could enhance the representation of the unnamed class members. Since most of the class members did not perfect their appraisal rights, their interests would be even more adequately represented if the Proposed Intervenors who likewise failed to pursue their appraisal rights were allowed to intervene.

If the Court did not allow the Proposed Intervenors to intervene, they could and have indicated that they would choose to be excluded from the class and file suits of their own. *See* Fed.R.Civ.P. 23(c)(2). Such action would only increase the costs of litigation for the Defendants and duplicate judicial efforts.

Having reviewed the matter, the Court, in its discretion, will allow the five Proposed Intervenors to intervene in the action as named representatives of the class pursuant to Rule 24(b)(2).

### DISCOVERY MOTIONS

The Plaintiffs request the Court to compel the Defendants to respond to their First Set of Interrogatories and their First Request for Production of Documents. The Defendants object to those discovery requests and seek a Protective Order providing that discovery pursuant to those requests not be had under Rules 26, 33, and 34 of the Federal Rules of Civil Procedure.

The Plaintiffs have served eighty-one document requests and seventeen interrogatories on the Defendants. The Court determined at the hearing that the discovery requests should be limited to matters occurring between 1974 and the present, since Defendant O. Bruton Smith did not return to his position on the Board of Directors of Speedway I until 1974. The Court also determined that the parties should attempt to define the proper scope of the discovery requests on their own. If the parties still disagree on the propriety of the discovery requests after they have met to resolve the matter, the Court, of course, will entertain arguments by the parties again.

NOW, THEREFORE, IT IS ORDERED that:

(1) The Defendants' Motion to dismiss is DENIED;

(2) The Defendants' Motion to stay is DENIED;

(3) Edward P. Gillen, General Bonded Warehouses, Inc., Charles T. Akre, Jr., Edwin P. Latimer, and Kemp R. Dunaway are allowed to intervene in this action as named Plaintiffs pursuant to Rule 24(b)(2) of the Federal Rules of Civil Procedure;

(4) This action is conditionally certified as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure;

(5) All named Plaintiffs, including those who have been allowed to intervene, shall serve as the class representatives;

(6) The class as conditionally certified shall consist of:

All persons whose shares in Charlotte Motor Speedway, Inc. were converted into the right to receive Three Hundred Dollars ($300.00) per share or its equivalent in United States Treasury certificates pursuant to the September 1985 merger of Charlotte Motor Speedway, Inc. into a subsidiary of Lone Star Ford, Inc.;

(7) The Defendants shall furnish the Plaintiffs' attorneys the names and addresses of all persons whose shares in Charlotte Motor Speedway I were converted into the right to receive $300.00 per share or its equivalent in United States Treasury certificates pursuant to the September 1985 merger;

(8) The Plaintiffs' attorneys shall send to the Defendants' attorneys and to the Court within fourteen (14) days of the filing of this Order a copy of the proposed Notice to the members of the class. The Court will allow the Defendants' attorneys to comment to the Court on the proposed Notice within ten (10) days after receipt thereof.

The Court will then review the proposed Notice and the Defendants' comments and forward to all counsel the Notice as approved for distribution to the members of the class by the Plaintiffs' counsel; and

(9) Counsel for the parties shall meet within ten (10) days of the date this Order is filed to resolve their dispute concerning the proper scope of the Plaintiffs' First Set of Interrogatories and Request for the Production of Documents.