In re SOUTHEAST HOTEL PROPER-
TIES LIMITED PARTNERSHIP
INVESTOR LITIGATION.

This Document Relates to All Actions.

No. C–C–91–423.
MDL No. 932.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Oct. 26, 1993.

598

C. Allen Foster, Thomas G. Pooley, Eric C. Rowe, Patton, Boggs & Blow, Greensboro, NC, Daniel W. Krasner, Lawrence P. Kolker, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, Martin Chitwood, Appel, Chitwood & Harley, Atlanta, GA, Thomas W. Tucker, Dye, Tucker, Everitt, Wheale & Long, Augusta, GA, Leigh Lasky, Beigel & Sandler, Ltd., Michael B. Hyman, Much, Shelist, Freed, Denenberg & Ament, P.C., Robert S. Atkins, Robert S. Atkins & Associates, James P. Freiburg, Weil, Freiberg, Thomas & Petersen, P.C., Chicago, IL, Jonathan P. Plasse, Diane Zilka, Goodkind, Laba-

ton, Rudoff & Sucharow, New York City, for plaintiffs.

John R. Wester, Stuart H. Johnson, Robinson, Bradshaw & Hinson, P.A., Charlotte, NC, Paul W. Stivers, Tony G. Powers, Theodore J. Sawicki, Rogers & Hardin, Atlanta, GA, Hatcher B. Kincheloe, Hedrick, Eatman, Gardner & Kincheloe, L. Lane Williamson, Womble, Carlyle, Sandridge & Rice, Charlotte, NC, John S. Stoppelman, Arlington, VA, Samuel H. McMahon, Jr., President, SHP Capital Inc., Charlotte, NC, for defendants.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, District Judge.

**THIS MATTER** is before the Court for class certification pursuant to Federal Rule of Civil Procedure 23. Plaintiffs in this multidistrict litigation [1] brought this action on behalf of themselves and all limited partners who, during the relevant time period, purchased units of Southeast Hotel Properties Limited Partnership (hereinafter "SHPLP" or the "Partnership").[2] Defendant Bear Stearns & Co. Inc. ("Bear Stearns") responded to plaintiffs' motion with a memorandum in opposition to class certification filed July 15, 1993 and third party defendants Marshall & Stevens Incorporated ("M & S") and Reznick, Fedder & Silverman, P.C. ("Reznick") filed their memoranda in opposition to plaintiffs' motion for class certification on July 14, 1993. Plaintiff filed its reply to the response on August 27, 1993. The Court has thoroughly reviewed the briefs, exhibits and relevant legal authorities. Based upon this review and for the following reasons, the Court concludes plaintiffs' motion must be granted.

---

**1.** By order of the Judicial Panel on Multidistrict Litigation, dated August 24, 1992, these actions have been transferred to this Court for coordinated or consolidated pretrial proceedings. At the time of transfer by the Panel to the Western District of North Carolina, the litigation consisted of four actions. Two actions were transferred to the Western District of North Carolina prior to consolidation for pretrial proceedings. The *Halpert* action was transferred from the Northern District of Illinois on October 17, 1991, and the *Weisman* action was transferred from the Southern District of New York on June 1, 1992. The other two actions were transferred pursuant to 28 U.S.C. § 1407 by the Panel to the Western District of North Carolina. These actions include the *Ruben* action transferred from the Southern District of Georgia and the *Schnair* action transferred from the Northern District of Illinois.

**2.** The plaintiffs named in the Consolidated Amended Class Action Complaint have moved for the certification of their lawsuit as a class action. Following transfer by the Panel, the Plaintiffs in three of the actions, *Ruben, Schnair,* and *Weisman,* moved this court for class certification on December 4, 1992. The plaintiffs in the *Halpert* action apparently have not joined in this motion, however, they remain putative class members.

## I. BACKGROUND

In July 1987, approximately 400 investors from nearly 40 states invested more than $36 million to purchase limited partnership units in SHPLP, a North Carolina limited partnership. The Partnership was formed to purchase and operate 15 Days Inn Hotels located throughout the southeastern United States. Plaintiffs contend that defendant Bear Stearns, acting as the Placement Agent, in conjunction with the general partners, Samuel H. McMahon, Jr. ("McMahon"), and SHP Capital, Inc. ("SHP")[3], prepared and disseminated offering materials including the June 8, 1987 Private Placement Memorandum ("PPM") which is at the heart of the complaint.

Investment in the Partnership was expected to provide the limited partners increased cash flow from the operation of the hotels which was fully sheltered for federal income tax purposes through 1990. Plaintiffs claim that the PPM also set forth projections of per-unit benefits from the years 1987 through 2000, which included an average projected rate of return of 25% per year. The offering was fully subscribed and the Partnership used the proceeds, along with a $65 million first mortgage loan, to purchase the hotels and commence operations. For various reasons which are disputed among the parties, the Partnership failed to generate the projected returns. It is claimed that each plaintiff has lost the value of his or her investment.

Plaintiffs Consolidated Amended Class Action Complaint ("Complaint") alleges claims under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, as well as claims for common law fraud and misrepresentation, breach of fiduciary duty, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act.[4]

Plaintiffs assert that the class members purchased units of the Partnership, relying on Defendant Bear Stearn's false and misleading representations contained in the PPM and other accompanying brochures and information regarding, *inter alia*, the financial projections of the Partnership. Plaintiffs also allege that the defendant fraudulently concealed information concerning their investments subsequent to purchase and breached their fiduciary duties to protect the value of class members' investments. The defendants primarily argue that plaintiffs are not typical or adequate and do not assert claims in which common questions predominate because individual questions of reliance defeat class certification.

## II. DISCUSSION

■ Initially, this Court must determine that a precisely defined class exists, and that the putative class representatives are in fact members of that class before considering the criteria set forth under Federal Civil Procedure Rule 23. *Haywood v. Barnes*, 109 F.R.D. 568 (E.D.N.C.1986). Here, the class is defined as all limited partners of SHPLP who purchased units of the Partnership, excluding the named defendants and Samuel H. McMahon, Jr. and members of his immediate family. Each of the named class representatives, Bonnie Ruben, Randolph R. Smith, Ruth S. Sturm, Mathew Weisman, Fred and Howard Schnair Building Partnership and Dr. Robert Rosenthal, purchased either full partnership units or some fractional units at a cost of $100,000 per unit. The Court is satisfied that the Complaint adequately alleges the existence of a class of investors similarly situated to the named class representatives. The Court must next conduct a thorough examination to determine if the class meets all of the requirements of Rule 23. *See, e.g., General Tel. Co. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Haywood v. Barnes*, 109 F.R.D. at 575 (the Court should conduct a "rigorous analysis" of the considerations affecting the factors identified in Rule 23).

---

**3.** Both SHP and McMahon are presently subject to federal bankruptcy proceedings.

**4.** Plaintiffs' Motion for Class Certification designated Plaintiffs Ruben, Smith and Sturm as Class Representatives under Section 10(b) of the Securities and Exchange Act of 1934 and all plaintiffs as Class Representatives in the other causes of action.

### A. The Requirements of Fed.R.Civ.P. 23

It is widely accepted that class treatment is particularly appropriate for proceedings involving alleged violations of securities laws and that Rule 23 is to be construed liberally to effectuate that end. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3rd Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985); *South Carolina Nat. Bank v. Stone*, 139 F.R.D. 325, 328 (D.S.C.1991). The proponents of class certification have the burden of establishing the right to certification. *Windham v. American Brands, Inc.*, 565 F.2d 59 (4th Cir.1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). In addition, when considering a class certification motion, the allegations of the complaint must be taken as true. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–178, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 97 (M.D.N.C.1993).

In order to be entitled to certification of a class action, plaintiff must satisfy all four prerequisites of subdivision (a) and at least one of the requirements of subdivision (b) of Rule 23. Here the plaintiffs are seeking class certification pursuant to Rule 23(b)(3).

Rule 23(a) provides that one or more members of a class may sue or be sued as representative parties on behalf of all only if:

(1) the class is so numerous that joinder of all is impracticable (numerosity);

(2) there are questions of law or fact common to the class (commonality);

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality);

(4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation). Fed.R.Civ.P. 23(a).

Under Rule 23(b)(3) a class action is appropriate if the prerequisites of subdivision (a) are satisfied, and additionally the court finds:

(5) that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members (predominance of common issues);

(6) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy (superiority). Fed.R.Civ.P. 23(b)(3).

### B. Numerosity

Numerosity should be determined in light of the particular circumstances of each case. Plaintiffs assert that the proposed class, which consists of over 400 limited partners throughout the United States, is sufficient to satisfy the numerosity requirement of Rule 23(a)(1). The Court agrees. Indeed, classes significantly smaller than the putative class involved here have been certified in the Fourth Circuit. *See, e.g., Brady v. Thurston Motor Lines*, 726 F.2d 136 (4th Cir.1984) (class with 74 persons well within range appropriate for class certification and a much smaller class is also sufficient), citing *Cypress v. Newport News General & Nonsectarian Hospital Association*, 375 F.2d 648, 653 (4th Cir.1967) (18 class members sufficient).

Of course, impracticability of joinder is not determined by a numerical test alone, in addition to the potential size of the of the class, the Court should also consider the geographic dispersion of the class. *In re Kirshner Medical Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D.Md.1991); *Rodriguez v. Bar-S Food Co.*, 567 F.Supp. 1241 (D.C.Colo. 1983). In this case, the class members are scattered across the United States thus making joinder of all members impracticable. *See also Allen v. Isaac*, 99 F.R.D. 45, 53 (N.D.Ill.1983) (If all members are not found within the same district, impracticability of joinder is increased). Accordingly, the requirements of Rule 23(a)(1) are satisfied.

### C. Commonality

The requirement for common questions of law or fact for a class action is achieved with the existence of a common question of either fact or law, although not all questions of law and fact raised need be in common. *See, e.g., Riordan v. Smith Barney*, 113 F.R.D. 60, 63 (N.D.Ill.1986); *Weiss v. York Hosp.*, 745 F.2d 786, 808–809 (3d Cir.1984).

Plaintiffs maintain that the defendants, Bear Sterns, in connection with their busi-

ness of providing financial services to clients, and Sam McMahon, as general partner, each engaged in a similar unified course of conduct to promote and sell Southeast Hotel Properties Limited Partnership interests to investors through false and misleading representations in the offering materials, and thereafter that defendants concealed their fraudulent conduct. As the Court in *Kirshner* recognized, a course of repeated representations will satisfy the commonality requirement where the same scheme operates on a class of purchasers. *In re Kirshner Medical Corp. Sec. Litig.*, 139 F.R.D. at 78. Here, plaintiffs allege that defendants scheme emanated from the PPM and other accompanying offering materials which contained, plaintiffs claim, misrepresentations relating to projected occupancy rates, operating expenses, interest expenses and other revenue projections.

In this case, plaintiffs have presented a sufficient number of common questions of law and fact to meet the requirements of Rule 23(a)(2). Particularly Plaintiffs allege that all the limited partners purchased their Partnership interests based upon the PPM and its accompanying promotion scheme. Clearly then, the common issues of fact uniting all SHPLP purchasers is whether Bear Sterns promotional materials and sales literature to which all Plaintiffs were exposed was distorted by misleading information that materially effected their investment decisions, and whether defendants failed to disclose material information concerning the Partnership.

More precisely, according to the plaintiffs, the issues common to the proposed Class are, among others, (1) whether the PPM and other offering materials contained false and misleading statements or omitted material facts concerning the investment; (2) whether Bear Stearns is responsible for those statements or omissions; (3) whether Bear Stearns intended to deceive, manipulate or defraud by omitting or misrepresenting material facts; (4) whether the members of the proposed Class have sustained damages as a result of Bear Stearn's conduct; (5) whether defendant's acts violated federal securities law; and (6) whether defendant violated the common law and/or the anti-fraud provisions of the Illinois Consumer Fraud and Deceptive Business Practices Act.

Other courts have found common questions similar to those presented here to be sufficient to pass muster under Rule 23(a)(2). For example, in *Riordan*, the plaintiffs' claims emanated from the private placement memorandum which allegedly contained a series of omissions and misrepresentations which injured all investors. The District Court in that case concluded that there existed common questions of fact, "including the existence, nature, extent and materiality of the alleged misrepresentations and omissions." *Riordan v. Smith Barney*, 113 F.R.D. at 63, *see also, In re Kirshner Medical Corp. Sec. Litig.*, 139 F.R.D. at 77–78.

The Court is convinced that the same facts that give rise to the legal and factual issues above would have to be proved by absent Class members if they pursued their claims individually. The only fact claims that might lack commonality would be those founded on oral representations. However, the mere fact that certain oral misrepresentations may have been made to the named plaintiffs does not preclude this Court from finding that there are common questions of law and fact for all class members which arise out of the lawsuit. *Riordan v. Smith Barney*, 113 F.R.D. at 63. The Court concludes that the issues alleged in the Complaint are proper for class treatment and satisfy the commonality element.

Despite the prevalence of common questions here, the defendants challenge each plaintiff for various reasons relating to the typicality and predominance of their claims as well as their ability to adequately represent the interests of the class. In particular, defendants raise individual questions of reliance as grounds for refusing to permit this action to proceed as a class action. The Court finds that complete resolution of the reliance issues as to each plaintiff would require an evaluation of the merits of the case. The Supreme Court has held that such an inquiry into the merits of a suit is improper at the class certification stage of the proceedings. *Eisen v. Carlisle & Jacquelin*, 417 U.S. at 177–178, 94 S.Ct. at 2152–53. How-

ever, this Court acknowledges the Fourth Circuit has said that class certification questions deserve a certain degree of care and attention and that some canvassing of the facts is permissible. *Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1312 (4th Cir.1978).

Accordingly, while this Court will not address the merits of the issues at this stage of the proceedings, it has carefully examined the facts developed through extensive discovery and determined that the nature of the issues claimed by the plaintiffs conform with the requirements established in Rule 23. Moreover, as demonstrated below, the Court concludes that defendant Bear Stearn's claim that individual questions of reliance defeat a finding of predominance, typicality and adequacy of representation is without merit.

### D. *Predominance*

Predominance, in the Rule 23 context, simply means that those issues or defenses claimed on behalf of the class ought to be superior to, and unencumbered by, any individual claims or issues which may affect the lawsuit. The rule does not require that each issue in the case be common to all members, but only that there are substantial common issues which predominate over the individual ones. *See, South Carolina National Bank v. Stone,* 139 F.R.D. 325 (D.S.C. 1991). This Court still believes that "complete identity among all members of the class as to all questions of law and fact or all claims and defenses is not required for certification." *Austell v. Smith,* 634 F.Supp. 326, 333 (W.D.N.C.1986). What is patently obvious from the above discussion of commonality, *supra* § II(c), is that the central questions in this action are common to all class members and that plaintiffs claims arise principally from the PPM and its accompanying sales brochure as well as defendants' alleged common scheme and course of conduct. These common questions represent a pivotal facet of the case and they can be resolved for all members of the class in a single adjudication. *See, e.g., Haywood v. Barnes,* 109 F.R.D. at 581.

The defendants, for their part, deny that common issues of law and fact predominate. They maintain that the core issues submitted by plaintiffs in their complaints turn largely on varying assumptions, experiences and representations from sources outside the PPM. Consequently, defendants contend that greater analysis of individual facts will be required by the Court and that such individual analysis conflicts with the interests of the unnamed class members. The threshold issue asserted by the defendants is whether the investors relied on the offering materials. Defendants suggest that resolution of this issue would require the Court to make findings as to the manner in which each limited partnership interest was sold, how they were described, the information relied upon and the justifiability of such reliance. The defendants, therefore, conclude that the highly individualized character of these investments, affecting some 400 investors, makes class certification inappropriate.

The presence of individual questions as to the reliance of each investor does not mean that the common questions of law and fact do not predominate over questions affecting individual members as required by Rule 23(b)(3) or that the representative's claims are not typical. *Eisenberg v. Gagnon,* 766 F.2d at 786. This is true for claims under the securities laws. For example, such a contention was rejected by the Second Circuit which noted that "[c]arried to its logical end [this argument] would negate any attempted class action promulgated under Rule 10b–5, since as the District Courts have recognized, reliance is an issue lurking in every 10b–5 action." *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir.1968); *see also, Shores v. Sklar,* 647 F.2d 462, 468 (5th Cir.1981) (*Shores I*). Also, defendants seem to overlook the fact that reliance is but one element of a cause of action under § 10(b) and Rule 10b–5. In addition to demonstrating reasonable reliance, the prima facie case under § 10(b) and Rule § 10b–5 requires the plaintiff to plead and prove (1) a misstatement or omission (2) of material fact (3) made with scienter (4) which was the proximate cause of the losses sustained. Clearly, the federal securities claims alleged by the plaintiffs contain elements which are common to the class.

Generally, in determining whether individual questions of reliance will predominate in

a class action the Court will either decide that plaintiffs are entitled to a presumption of reliance or that such inquiries delve too deeply into the merits of the case and should not be considered in a motion for class certification. Three theories under which courts have found sufficient facts to presume reliance are the fraud on the market theory, the fraud on the "undeveloped" market theory, and the "omissions only" exception established by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

Under the first theory, the fraud on the market exception, proof of reliance is presumed because the plaintiff is considered to have relied on the integrity of the market. Based on the facts alleged in this case, there is no basis for a fraud on the market theory that would trigger a presumption of reliance. The limited partnerships involved in this case were not traded on the open market. *See, e.g., In re MDC Holdings Securities Litigation,* 754 F.Supp. 785, 804 (S.D.Cal.1990); *Lubin v. Sybedon Corp.,* 688 F.Supp. 1425, 1445 (S.D.Cal.1988).

The second theory involves plaintiffs' assertion that class members will not, at any time, be required to prove reliance individually because they are entitled to a presumption of reliance under the fraud on the undeveloped market exception as articulated by the Fifth Circuit in *Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981) (*Shores I* ). Under *Shores I,* reliance may be established by proof that securities not traded on the open market would not have been offered but for the fraudulent conduct of the defendants. *Shores v. Sklar,* 647 F.2d at 469–70.

The necessity of proving reliance becomes a more complicated question in cases such as this, where both misrepresentations and omissions are involved. While plaintiffs make a tenable argument that reliance should be assumed under the *Shores* theory, this Court believes that we need not now consider the appropriateness of class certification under that theory because to do so requires the plaintiff to establish the materiality of the fraud and that the security could not have been offered but for the fraud of the

defendants. The Court finds that even though the Complaint alleges that none of the limited partners would have purchased Partnership units absent defendant's fraud, the evidence and the pleadings proffered by the plaintiff are insufficient to support a finding that, in fact, the Partnership was never financially viable. Furthermore, such an analysis of the Partnership's marketability requires an inappropriate inquiry into the merits of the plaintiffs' claim.

The third theory under which reliance can be presumed is derived from the Supreme Court decision in *Affiliated Ute,* which removed positive proof of reliance as a condition of recovery where the facts involve "primarily a failure to disclose." *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. at 153–54, 92 S.Ct. at 1472, 31 L.Ed.2d at 761. Defendants correctly argue that *Affiliated Ute* does not apply to the instant case which is not based solely on alleged omissions of facts. *See, Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 722 (11th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 1221, 99 L.Ed.2d 421 (1988); *Kennedy v. Tallant,* 710 F.2d 711, 717–718 (11th Cir.1983).

■ Accordingly, the Court finds that in a case such as this, where it is claimed that liability rests primarily on both misrepresented and omitted material facts, positive proof of the object of reliance need not be demonstrated as a prerequisite to class certification. *See In re United Energy Corp., Etc., Securities Litigation,* 122 F.R.D. 251, 255 (C.D.Cal.1988). Numerous other courts have consistently held that even though questions concerning the varying levels of investment sophistication, experience, and individual reliance are properly raised as defenses, they are clearly questions which go to the merits of the case and should not be considered in a certification motion. *In re MDC Holdings Securities Litigation,* 754 F.Supp. at 802; *In re United Energy Corp., Etc., Securities Litigation,* 122 F.R.D. at 255. Furthermore, such a determination at this stage of the proceedings is clearly premature and inefficient. Defendant confuses the predominant fact of reliance with the diversity of Plaintiff's manner of relying. The fact of reliance is different from the object relied upon. At

this point, we cannot decide the object of reliance issue without improperly intruding on the merits of the claims and defenses. *In re Data Access Systems Securities Litigation*, 103 F.R.D. 130, 139–140 (D.N.J.1984).

In any event, the Court agrees with the Eleventh Circuit that since the complaint here alleged a common course of conduct by all defendants, the issues of individual reliance could not predominate over common questions of fact even if the object of reliance differs. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d at 724. (involving the sale of limited partnerships based on false and misleading information). As previously stated, like *Kirkpatrick*, the core of this case is premised on the claim that the named plaintiffs, and presumably the absent class members, relied on alleged misrepresentations contained in standardized documents or other communications disseminated to the entire class as a result of the defendants common scheme. These common questions of fact presented by the plaintiffs clearly predominate.

### E. *Typicality*

As a general rule, a plaintiff's claim meets the typicality requirement if it is both legally and factually similar and arises from the same events or course of conduct that gives rise to the claims of other class members. *Dura–Bilt Corporation v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981); *Simpson v. Specialty Retail Concepts*, 149 F.R.D. at 99. Generally, allegations that the plaintiffs' securities purchases arose out of the defendants' common course of conduct satisfy the typicality requirement. *South Carolina Nat. Bank v. Stone*, 139 F.R.D. at 329, *see also, Epstein v. Weiss*, 50 F.R.D. 387, 390 (E.D.La.1970). A further test is whether the class representative will promote the interests of the class as he protects his own. *In re Baldwin–United Corporation Litigation*, 122 F.R.D. 424, 428 (S.D.N.Y. 1986).

Here, the plaintiffs purchases of partnership units allegedly arose out of a common course of conduct on the part of the defendants. The named plaintiffs are typical in that they, like most investors, allegedly relied upon the PPM and other sales informa-tion in making their investment decision. Furthermore, the claims do not allege any conduct which is special or unique to the named plaintiffs and apparently all members of the class have suffered similar damages as a result of this investment.

Defendants contend that plaintiffs fail to meet Rule 23(a)(3)'s requirement that the claims or defenses of the proposed representatives be typical of the claims or defenses of the class because some of the defenses that apply to class members are atypical and vary from investor to investor. Specifically, defendants challenge plaintiffs' compliance with the Rule on the grounds that the proposed class representatives learned of the investment through different brokers and other sources and relied on the judgment of different persons in deciding to invest in SHPLP.

In rejecting defendants arguments that investors here are atypical, courts have stressed that the crucial issue is whether the claims of the class representatives are typical of the claims of the class members, not whether there is a similarity in personal backgrounds or knowledge between individuals. *See, Simpson v. Specialty Retail Concepts*, 149 F.R.D. at 101. In short, typical does not mean identical. *Moskowitz v. Lopp*, 128 F.R.D. 624, 629 (E.D.Pa.1989).

Defendants further allege that pre-certification discovery has established that several of the named plaintiffs had not relied on the written offering material but had instead relied on oral statements by their brokers and other matters in making their investment decisions. The defendants suggest that the recent decision in *Williams v. Balcor Pension Investors*, 150 F.R.D. 109 (N.D.Ill.1993), is demonstrative of the scope of the necessary reliance inquiry to be conducted in securities class action cases by the district court. Defendants correctly point out that the inquiry in *Williams* sought to determine whether the plaintiff was subject to unique defenses by first ascertaining whether he directly or indirectly relied upon the offering materials. Relying principally on Williams' deposition testimony the court, in denying class certification, concluded that "Williams' non-reliance may very well become a significant focus of [the] case, diverting attention away from is-

sues common to the class." *Williams v. Balcor Pension Investors*, 150 F.R.D. at 113–14.

Here, by contrast, the Court is convinced that the reliance element is only one issue which is not likely to become the focus of the litigation and that the better reasoned solution is to hold separate hearings or bifurcate the trial in order to deal with these issues if it is later determined that reliance is a necessary element. *See Sharp v. Coopers & Lybrand*, 70 F.R.D. 544, 547 (E.D.Pa.1976), *aff'd in part, rev'd in part on other grounds*, 649 F.2d 175 (3rd Cir.1981); *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir.1968); *South Carolina Nat. Bank v. Stone*, 139 F.R.D. at 333 (even if individual issues of reliance arise, it is more appropriate to determine the common issues in one proceeding, which may be followed by separate hearings regarding any individual issues).

Unlike *Williams*, the purported class claim here is not grounded solely on alleged written misrepresentations contained in the PPM. Rather the Complaint cites the PPM and "accompanying representations, brochures, and information ( [labeled] "Offering Materials")." Another important factual distinction between the case at bar and *Williams* is that Williams' deposition revealed that he relied *exclusively* and *only* on his investment advisor. *Williams v. Balcor Pension Investors*, 150 F.R.D. at 112, fn. 2. (emphasis added). The pleadings and evidence before this court indicate that such exclusive reliance cannot be demonstrated for the plaintiffs in this matter.

For example, the deposition testimony of named plaintiff, Bonnie Ruben, shows that while she may have only skimmed the PPM, she read the entire sales brochure and also relied upon oral representations from her brokers at Bear Sterns. These oral representations, unlike those in *Williams*, were allegedly part of a standardized sales script based upon representations in the PPM and ultimately in furtherance of the common scheme to defraud.

Even the most viable candidates for exclusion based on the *Williams* rationale, namely the Schnair brothers and Mathew Weisman, are not so atypical that they should be excluded from representing the class. In both cases the depositions indicate that some portion of the PPM or the sales brochure, or both, were relied upon by these plaintiffs. Further, in the case of Weisman, the oral representations of his investment adviser seem to have been based upon information from some of the offering materials. Such a causal connection between the secondary source and the offering materials provided by the defendant is not considered reliance which would render a plaintiff atypical or necessarily subject him to a unique defense. In fact, the *Williams* Court recognized that reliance on secondary sources does not itself render a plaintiff atypical. *Williams v. Balcor Pension Investors*, 150 F.R.D. at 114, *see also, Randle v. Spectran*, 129 F.R.D. 386, 391 (D.Mass.1988).

In sum, unlike *Williams*[5] plaintiffs here allegedly read the PPM and other offering materials in varying degrees and the Court finds that it is likely that most absent class members similarly relied, to varying degrees, on the PPM and other offering materials as well as secondary advice from others. *See, Austell v. Smith*, 634 F.Supp. at 334. Accordingly, any unique defenses or claims that plaintiffs are atypical are not likely.

Notwithstanding possible variations in proof among members of the prospective class, the Court finds that the plaintiffs have satisfied the typicality requirement by showing that the same allegedly unlawful conduct affected all members of the prospective class.

### E. *Adequacy of Representation*

 The primary purpose of the adequacy requirement is to protect the interests of the class. The adequacy standard of Rule 23(a)(4) is met if: (1) the named plaintiff has interests common with, and not antagonistic to, the Class' interests; and (2) the plaintiff's attorney is qualified, experienced and gener-

---

**5.** Interestingly, subsequent deposition testimony revealed that Williams never read the prospectus at all. There is no indication that any of the named plaintiffs did not read at least a portion of the PPM or other promotional material at some time during the investment decision-making phase of this transaction.

ally able to conduct the litigation. *See e.g., Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975); *Lewis v. Capital Mortgage Investments,* 78 F.R.D. 295, 302 (D.Md.1977); *South Carolina National Bank v. Stone,* 139 F.R.D. at 329–330, citing *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d at 726. Moreover, the burden is on the defendants to prove that the representation will be inadequate. *Haywood v. Barnes,* 109 F.R.D. at 579, citing *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

The defendants again argue that because the element of reliance is lacking, the proposed class representatives cannot assert the claims pled in the Complaint. The Court finds no conflict between the claims of the named plaintiffs and those of absent class members because reliance variations notwithstanding the limited partners have a similar interest in proving the false and misleading nature of Bear Stearn's oral and written communications.

As set forth above, factual differences involving the sale of the limited partnership interests, for example; the extent to which the investor relied upon various promotional material, will not defeat class certification. *See, In re Baldwin–United Corporation Litigation,* 122 F.R.D. at 428. The named plaintiffs should adequately represent the claims of the class since those claims are also their own. *Austell v. Smith,* 634 F.Supp. at 334. Furthermore, all plaintiffs have a significant financial stake in the outcome of this litigation. All class members stand or fall on the issue of whether material information was misrepresented or withheld from SHPLP purchasers. The Court believes the named plaintiffs will pursue this issue vigorously. *See, In re Baldwin–United Corporation Litigation,* 122 F.R.D. at 429.

The remaining arguments challenging the plaintiffs' adequacy arise from third party defendant Reznick's memorandum in opposition to plaintiffs' motion for class certification. Reznick's principal argument alleges that the fee arrangement between proposed class representative Ruth Sturm and her counsel was unethical and further that class certification should be denied because of such arrangement. Reznick also argues that named plaintiffs are not knowledgeable enough about the litigation.

First, in arguing that certain named plaintiffs are not sufficiently knowledgeable, Reznick relies on the fact that named plaintiffs Sturm and Schnair may not have read the Complaint. However, the adequacy of representation test is not concerned with whether the plaintiff personally derived the information pleaded in the Complaint or whether the plaintiff will personally be able to assist Counsel. *Lewis v. Curtis,* 671 F.2d at 789. Whether or not the class representative is familiar with the specifics of the complaint is not dispositive of the more critical question of whether that individual will adequately represent the claims of the class by devoting time and effort to the lawsuit. The deposition testimony reveals that Ruth Sturm was very active in conferring with other class members and seeking counsel to undertake appropriate action to vindicate her rights and the rights of fellow limited partners.

Similarly, Howard Schnair's testimony demonstrates that he has substantial familiarity with the factual underpinnings of his claim and that he is committed to the class. Furthermore, it is generally accepted that in securities actions, a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance on the expertise of counsel is to be expected. *In re United Energy Corp., Etc., Securities Litigation,* 122 F.R.D. at 256–257.

Reznick's primary argument alleges that during the deposition of Ruth Sturm, Reznick's counsel established that the plaintiffs have agreed with their counsel that counsel— rather than the class members or class representatives—shall bear ultimate liability for the costs and expenses of this litigation. The Court has carefully reviewed the deposition of named class representative, Ruth Sturm, and finds that the arrangement she has with her counsel is ethical and in no way impacts upon the adequacy of counsel under Rule 23(a)(4). Furthermore, several of the plaintiffs' depositions indicate that the plaintiffs sought out competent counsel, who agreed to

file class action complaints on their behalf. This refutes the defendant's contention that this suit was bought by plaintiff's counsel.

■■■ Generally, pre-certification inquiries into the financial arrangements between class representatives and their counsel respecting the expenses of the litigation are rarely appropriate. *See, e.g., Sanderson v. Winner,* 507 F.2d 477 (10th Cir.1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975); *Kamens v. Horizon Corp.,* 81 F.R.D. 444 (S.D.N.Y.1979). However, it is widely recognized that the economics of the class action suit often are such that counsel have a greater financial incentive for obtaining successful resolution of a class suit than do the individual class members. Obviously this creates a potential for abuse. *See Deposit Guaranty Nat. Bank v. Roper,* 445 U.S. 326, 338–339, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980) (plurality opinion). Therefore, the Court will examine the fee arrangement entered into between Plaintiff Sturm and her counsel.

As set forth in Local Rule 1, both the ABA ethical rules and the North Carolina ethical rules apply to practice in this Court. Rule 5.3 of the North Carolina Rules of Professional Conduct addresses the circumstances under which an attorney can ethically agree to advance the costs of litigation. Subsection (B) of Rule 5.3 provides as follows:

> While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, *except that a lawyer may advance or guarantee the expenses of litigation,* including court costs, expenses of investigation, expenses of medical examination and costs of obtaining and presenting evidence, *provided the client remains ultimately liable for such expenses.* (emphasis added)

Mrs. Sturm affirmed her ultimate liability when she testified that she "realize[d] all the responsibilities that go along with filing a class action suit" and "I would personally be responsible for doing anything I was supposed to do." (Sturm Tr. 217–219).

It is not disputed that the fee arrangement at issue is permitted by the ABA Model Rules of Professional Conduct which allows attorneys to "advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter." Model Rules of Professional Conduct Rule 1.8(e)(1).

After careful review of Mrs. Sturm's deposition, which is the only evidence furnished in the memorandum in opposition, this Court believes that the argument presented by Reznick shows no basis for concluding that class counsel have violated any applicable standard of conduct which would prevent certification of the class in this action. Mrs. Sturm's testimony indicates that she was told that she could be liable to pay some costs and further that she was personally responsible to pay some portion of the expenses. At no point did Mrs. Sturm indicate that she would not remain liable to pay "some costs" advanced. This Court believes that while she thought it improbable that she would be required to pay and that it was her understanding that "in reality" [6], she would "probably not" have to bear the costs of this action, her testimony does not reveal an agreement which contradicts her statement that she would assume personal responsibility for her share of the expenses.

The Court concludes therefore that the class is represented by competent counsel and plaintiffs who adequately represent the interests of the class.

### F. *Superiority*

■■■ In determining superiority, the court must consider several factors: (a) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the

---

**6.** The Courts too have recognized that the reality of class litigation is that lawyers rarely seek to recover costs. *See, e.g., County of Suffolk v. Long*

*Island Lighting Co.,* 710 F.Supp. 1407, 1413 (E.D.N.Y.1989), *modified,* 907 F.2d 1295 (2d Cir. 1990) (Weinstein, J.).

management of a class action. Fed.R.Civ.P. 23(b)(3). Considering these criteria, the Court believes that the class device is superior to any other method of adjudicating the claims involved in this litigation.

First, as set forth above, most of the legal and factual issues to be determined are common to all plaintiffs. Therefore, allowing this suit to proceed as a class action will eliminate the risk of inconsistent adjudications. Second, no putative class members, including those involved in the *Halpert* action, have opposed class certification. Third, both the number and geographic diversity of potential parties to this action suggest that class certification is the most efficient way to proceed. This efficiency and desirability was recognized by the Judicial Panel on Multidistrict Litigation, which decided to transfer the various pending cases to this district because the actions involved common questions of fact and such concentration would best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Finally, the Court does not perceive that this case presents any extraordinary difficulties of management that would be presented by certification of these claims. Accordingly, a class action is therefore superior to other available methods for the fair and efficient adjudication of this controversy. *See Austell v. Smith*, 634 F.Supp. at 334 (the resolution in one action of the common questions relating to the existence, character, and materiality of the alleged misrepresentations and omissions in the [offering materials] and to the alleged fraudulent scheme is the most logical, fair and efficient manner in which to proceed); *Riordan v. Smith Barney*, 113 F.R.D. at 66.

### F. Class Certification of State Law Claims

 Defendants correctly point out that plaintiffs state law claims are dependant on the same factual issues as their § 10b–5 claims. Not surprisingly, Bear Stearns contends that plaintiffs' common law fraud, breach of fiduciary duty and Illinois Act claims should not be certified for the same reasons that the securities claims should not be certified. Defendants argue that, as the elements and burden of proof applicable to

these claims vary from jurisdiction to jurisdiction, common issues of law or fact do not predominate.

Generally, the Courts have arrived at different answers to the issue of whether pendent state law claims should be certified for class treatment in litigation arising primarily out of securities law violations. However, the Court recognizes that the trend in recent securities fraud cases has been to certify related pendant claims in which individual issues of state law do not predominate. *See, e.g., In re VMS Securities Litigation*, 136 F.R.D. 466, 488 (N.D.Ill.1991); *In re Kirschner Medical Corp. Securities Litigation*, 139 F.R.D. at 83–84.

In this case, for both the federal and state claims, plaintiffs will be required to prove that statements or omissions made by the defendant were materially false or misleading. The evidence necessary to establish the required elements and meet the plaintiffs' burden of proof for all claims, including the Illinois Act claim, arises out of the same purportedly fraudulent scheme. The Court therefore finds that the required predominance of common issues is present with regard to not only the plaintiffs' federal claims, but their state law claims as well.

### III. CONCLUSION

The Court finds that (1) the proposed class representatives are typical and fully adequate representatives; (2) the common issues presented by the plaintiffs predominate over individual issues; and, (3) the class action is the superior method for a fair and efficient adjudication of this matter.

**NOW, THEREFORE, IT IS ORDERED** that:

(1) Plaintiff's motion for class certification be, and hereby is **GRANTED.**

(2) A class will be certified pursuant to Rule 23(b)(3) to include:

All persons or entities throughout the United States that purchased limited partnership interests in the Southeast Hotel Properties Limited Partnership during the relevant time period. Excluded from the class are the individual defendants, their em-

ployees, and the members of the immediate families of each of the individual defendants.

(3) The class shall be maintained with respect to the following causes of action:

(a) Plaintiffs Ruben, Sturm and Smith as class representatives for any claims for damages under federal securities laws.

(b) Plaintiffs Ruben, Sturm, Smith, Schnair, Rosenthal and Weisman for any claims of common law fraud and breach of fiduciary duties, and any claims under the Illinois Consumer Fraud and Deceptive Business Practices Act which are premised upon alleged false and misleading representations or omissions caused by the named Defendants in order to induce prospective investors to purchase the limited partnerships.

**IT IS FURTHER ORDERED** that a status hearing is set for November 23, 1993, at 2:00 p.m., at which time the parties must submit sample notice forms pursuant to Rule 23(c)(2) by which named and unnamed class members will be advised of this action, of the binding nature of any judgment, that they can opt out by a specific date, and that they may retain individual counsel. For an example form of notice, the parties are directed to the notice set out in Manual for Complex Litigation, Second, § 41.41 (Attachment A).