Dwayne H. WISEMAN and Steven J. Leonard, individually and on behalf of those similarly situated, and on behalf of the Capital Accumulation Plan for the Employees of First Citizens Bank & Trust Company and Adopted Related Employees, dated July 1, 1984, as amended, ("Plan"), Plaintiffs,

v.

FIRST CITIZENS BANK & TRUST COMPANY; First Citizens Bank & Trust Company, Trust Department; John Doe Nos. 1 Through 6 and Jane Doe Nos. 1 Through 6, individually and in their respective capacities as the Plan's Sponsor, Trustee, Administrator, and Committee; and the Plan, Defendants.

No. CIV. 1:02CV41.

United States District Court,
W.D. North Carolina,
Asheville Division.

Jan. 8, 2003.

Kevin A. Kauer, Jesse C. Belcher, J. W. Matthews, III, H. Donald Sellers, Haynesworth, Sinkler, Boyd, P.A., Greenville, SC, for plaintiffs.

Gary J. Rickner, Ward and Smith, New Bern, NC, George Ward Hendon, Adams, Hendon, Carson, Crow & Saenger, PA, Asheville, NC, for defendants.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on Plaintiffs' motion for class certification, filed July 18, 2002. Defendants' request for oral argument was granted and a hearing on Plaintiffs' motion was held before the undersigned on November 26, 2002. The motion for class certification is now ready for resolution.

## I. FACTUAL HISTORY

Plaintiffs filed this action against Defendants for alleged violations of their fiduciary duty in administering a 401(k) pension plan under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (ERISA). Plaintiffs request certification of this claim as a class action and propose the class to be composed of

> [a]ll participants in the Capital Accumulation Plan for the Employees of First Citizens Bank & Trust Company and Adopting Related Employers, dated July 1, 1984, as Amended, whose accounts were mapped over on July 1, 2000 into a mutual fund known as 'Federated Large Cap Growth Fund.'

*See* Plaintiffs' Memorandum in Support of Motion to Certify Action as Class Action ["Plaintiffs' Memorandum"], filed July 18, 2002, at 2.

Plaintiffs Dwayne Wiseman and Steven J. Leonard are former employees of First Citizens Bank and are participants in The Capital Accumulation Plan of First–Citizens Bank & Trust Company and Adopting Related Employers, dated July 1, 1984, as Amended (hereinafter, the "Plan"). The Plan is a self-

directed, 401(k) retirement plan, subject to ERISA. *Id.* Pursuant to the Plan, participants could choose to deduct a portion of their First Citizens salary as payment into the Plan for their retirement. *Id.*, at 4. Prior to July 2000, the Plan offered participants six investment options in which to invest their balances. One of these options was the "Pooled Stock Fund" (PSF). *Id.* Plaintiffs Wiseman and Leonard had their entire 401(k) plan invested in the PSF. Defendants' Memorandum in Opposition to Plaintiffs' Motion to Certify Action as Class Action ["Defendants' Memorandum"], filed August 13, 2002, at 12, 15. The PSF was a fund that invested "primarily in high quality, dividend paying common stocks of companies with medium to large capitalizations.... The primary objective [was] to outperform the S & P 500 Stock Index while taking on less risk than that of the Index." Exhibit 14, First Citizens Explanation of Investment Options, *attached to* Plaintiffs' Memorandum.

In the months prior to July 2000, the Plan's Committee investigated the possibility of changing the investment options that were offered to participants and looked specifically into mutual funds that were managed by Federated Investors. *See* Plaintiffs' Memorandum at 5. On March 6, 2000, after various meetings and recommendations, the Plan's Committee informed Plan Participants that a temporary freeze on changes to participant accounts would be implemented on May 31, 2000, in order to prepare for plan enhancements. Because of the restrictions on transfers of existing balances at the time, participants would have until March 14, 2000, to make any transfers prior to the freeze. Any participant wishing to make a transfer after March 14 would have to wait until the freeze was lifted, which was anticipated to be in early September 2000.[1] Exhibit 8, Lou Davis Correspondence, dated March 6, 2000, *attached to* Plaintiffs' Memorandum.

On April 24, 2000, Plan participants were notified of new features that would be added to the Plan as of July 1, 2000. Thirteen new mutual funds, managed by Federated Investors, would be offered to participants, replac-

ing the six First Citizens funds that had been previously available. In addition, Plan participants' existing balances would be automatically transferred or "mapped over" into the new funds. Investments in the PSF were mapped over into the Federated Large–Cap Growth Fund (LCGF). *See* Exhibit 11, Lou Davis Memorandum, dated April 24, 2000, *attached to* Plaintiffs' Memorandum. While the freeze was in place, Plan participants had no control over their accounts. The length of time of the freeze on asset transfers was shorter than anticipated and participants gained access to their accounts on August 21, 2000. Defendants' Memorandum, at 8. Once the freeze was lifted, participants could transfer balances or direct new contributions to any of the selected Federated funds on a daily basis, over the phone or *via* the Internet. *Id.* During the freeze, the LCGF rose in value by 4.39 percent, while the PSF rose by 3.38 percent. Exhibit 2, Affidavit of Marilyn C. Fitch, *attached to* Defendants' Memorandum, ¶ 8.

As stated earlier, Plaintiffs Dwayne Wiseman and Steven Leonard are former employees of First Citizens and investors in the Plan. Dwayne Wiseman is currently the Chief Executive Officer and President of Blue Ridge Savings Bank. Deposition of Dwayne H. Wiseman, filed August 13, 2002, at 4. Wiseman is an experienced investor, owning several stocks. *Id.*, at 35–36, 97–98. Professionally, Wiseman sits on the two-person Administrative Committee of Blue Ridge Bank's 401(k) Plan that was started in 1999. In this position, he and Blue Ridge's Chief Financial Officer selected the mix of funds to be offered to participants of Blue Ridges's 401(k) plan. *Id.*, at 16–17. The Blue Ridge Plan, like the current First Citizens' Plan, allows participants to make changes to their accounts over the phone or Internet. *Id.*, at 23.

Wiseman received the information sent by First Citizens about the mapover prior to the freeze period. Once the freeze was lifted, Wiseman used his new Personal Identification Number (PIN) to "look at" his account over the Internet. *Id.*, at 36–37. He contin-

1. Participants would be able to change their deferral election and withdraw funds from the Plan until the May 31 deadline. *See* Defendants' Memorandum, at 6.

ued to monitor his investments by quarterly reports. *Id.,* at 49. Despite seeing its decline in value, Wiseman kept his entire 401(k) investment in the LCGF. On the advice of counsel, he had not redirected or reallocated any of his money, despite significant losses. *Id.,* at 27; *see also,* Transcript of November 26, 2002 Proceedings ["Transcript"] at 61, 64–65.

Plaintiff Steven Leonard worked for First Citizens as a mortgage loan officer and branch manager from 1991 through 1997. Deposition of Steven J. Leonard, filed August 13, 2002, at 10–11. After leaving First Citizens, he worked for Plaintiff Wiseman at Blue Ridge Bank as a mortgage loan officer until February 2002 when he went to work for Mountain Bank. *Id.,* at 16–18. While at First Citizens, Leonard invested 16 percent of his salary in the Plan and, specifically, in the PSF. *Id.,* at 34, 37. Leonard received information from First Citizens about the change in funds and the mapping over into the LCGF. *Id.,* at 67–72. Once the freeze was lifted, Leonard took advantage of the automated system to keep track of his 401(k) investment. *Id.,* at 81–82. Like Wiseman, Leonard has other investments, including an IRA and stock portfolio. *Id.,* at 22–23, 32. Also like Wiseman, Leonard invested his entire 401(k) allocation in the PSF which was mapped over into the LCGF. Despite significant losses, he has not redirected or reallocated any of his money. *Id.,* at 57; *see also,* Transcript, at 61, 64–65.

## II. MOTION FOR CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 sets forth a two-part test for certifying a class action. First, the Plaintiffs must show four prerequisites: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims ... of the representative parties are typical of the claims ... of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). If each of these prerequisites is met, the putative class must then show that it fits into one of three categories specified in Rule 23(b). Fed.R.Civ.P. 23(b). Unless each prerequisite is met, a determination under Rule 23(b) is unnecessary. *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 337 n. 3 (4th Cir.1998).

While each of the prerequisites of Rule 23(a) is distinct, the analysis is not always as clear.

> [T]he final three requirements of Rule 23(a) "tend to merge," with commonality and typicality "serv[ing] as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

*Id.,* at 337 (quoting *General Tel. Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). In ruling on a motion for class certification, the district court must accept the allegations of the complaint as true. *In re Kirschner Med. Corp. Sec. Litig.,* 139 F.R.D. 74, 81 (D.Md.1991). Nonetheless, the burden of establishing the right to certification remains with the proponents thereof. *Stastny v. Southern Bell Tel. & Tel. Co.,* 628 F.2d 267, 276 (4th Cir.1980). Finally, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Tel. Co., supra,* at 161, 102 S.Ct. 2364.

### A. Rule 23(a)(1): Numerosity

To satisfy the requirement of numerosity, the proposed class must be so numerous that joinder of each member individually would be impractical. Fed.R.Civ.P. 23(a)(1). There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.,* 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.,* 584 F.2d 34 (4th Cir.1978)); *see also, Dameron v. Sinai Hosp. of Baltimore, Inc.,* 595 F.Supp. 1404, 1407–08 (D.Md.1984) (stating that "[a] class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical"). Further, the fact that the precise number of class members cannot be determined at the certifica-

tion stage does not preclude class certification. *See Haywood v. Barnes,* 109 F.R.D. 568, 576 (E.D.N.C.1986). Plaintiff need only make a reasonable estimate of the number of class members. *Id.*

■ Defendants have not specifically objected to Plaintiffs' claim of numerosity. In fact, Defendants note that on July 1, 2000, following the mapover, 3,580 Plan participants were contributing to the LCGF. *See* Defendants' Memorandum, at 8. Thousands of potential plaintiffs would make joinder impractical. The potential class of thousands, therefore, fulfills the numerosity requirement of Rule 23(a)(1).

### B. Rule 23(a)(2): Commonality

■ To meet the commonality prerequisite for class certification, Rule 23 requires the existence of "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2) and (3). The commonality prerequisite does not require that all questions of law or fact be common to all putative class members. *Broussard, supra* (noting that class members' factual and legal claims do not need to be identical in all respects). Common questions do not need to predominate, but must exist. *See Rodger v. Electronic Data Sys. Corp.,* 160 F.R.D. 532, 537 (E.D.N.C.1995). A class action will not fail solely because there are factual differences among members of the putative class. *See Holsey, supra,* (noting that "[d]espite the presence of individual factual questions, the commonality criterion of rule 23(a) is satisfied by the common questions of law presented."). There is no "requirement that answers to common questions guarantee a determination of liability." *Haywood,* 109 F.R.D. at 577.

A court, however, should weigh the common issues with the need for individual analysis to determine whether a class action is appropriate. When a case requires extensive individualized inquiry, it will unduly burden the Court and "will disserve the economy rationale that renders the class action device useful." *Mick v. Ravenswood Aluminum Corp.,* 178 F.R.D. 90, 93 (S.D.W.Va.1998). "Class certification is only proper when a determinative critical issue overshadows all other issues." *Stott v. Haworth,* 916 F.2d

134, 145 (4th Cir.1990) (overruling class certification where proper judicial scrutiny required a case-by-case analysis of each class member's claim); *see also, Broussard,* 155 F.3d at 340–41 (discussing problems with class action certification where individual issues predominate). To that end, it "may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *General Tel. Co.,* 457 U.S. at 160, 102 S.Ct. 2364. A court may, therefore, make a preliminary examination of the merits of a case to determine whether the cause of action requires too much individual attention for a proper class action. *Johnston v. HBO Film Mgmt., Inc.,* 265 F.3d 178, 186 (3d Cir.2001).

In the current case, Plaintiffs recite several issues that they believe are common to the proposed class. Plaintiffs' Memorandum, at 16–17. These issues all pertain to the general claim that the Defendants breached their fiduciary duty under ERISA to the Plan participants. Without examining the merits or viability of each of these specific claims, the undersigned finds that the Plaintiffs are correct in asserting that the issue of breach of fiduciary duty is common to all members of the proposed class.

Commonality, however, cannot be resolved so easily. This Court should determine whether individual issues will outweigh the common issues and, thus, make a class action unmanageable or unreasonable. *General Tel. Co.,* 457 U.S. at 161, 102 S.Ct. 2364. In order to evaluate the appropriateness of a class action in the current case, the undersigned finds it necessary to briefly examine the merits of the cause of action.

■ The 401(k) plan at issue is an ERISA 404(c) plan, as it allows a participant "to exercise control over assets in his individual account" and "to choose, from a broad range of investment alternatives, the manner in which some or all of the assets in his account are invested." 29 C.F.R. § 2550.404c–1(b)(i)(ii). By statute, a fiduciary will not be liable to the participant "for any loss, or by reason of any breach, which results from such participant's ... exercise of control" of his account. 29 U.S.C. § 1104(c)(1)(B). A

fiduciary, therefore, will avoid liability by showing that the participant's independent control was the cause of any monetary loss to the participant's account. *Id.; see also, In re Unisys Savings Plan Litig.,* 74 F.3d 420, 445 (3d Cir.1996) (noting that § 1104 provides a fiduciary who breached his duty with a valid defense when the loss is the result of the participant's exercise of control).

In the current case, the named Plaintiffs have lost a significant amount of money. They allege that this loss was the result of the Defendants misleading them about the nature of the Federated LCGF and then placing their money into the LCGF. Plaintiffs argue that the Defendants' behavior was a breach of their fiduciary duty. All parties agree that since the mapover, the LCGF has declined significantly in value. Transcript, at 30, 41. Plaintiffs, therefore, have alleged (1) a breach of duty; (2) damages in the form of a decline in value of their 401(k) plan; and (3) that the damages were the result of the Defendants' breach of fiduciary duty.

By statute, Defendants will avoid liability, though, if the Plaintiffs' loss was the result of their exercise of independent control over their own accounts. 29 U.S.C. § 1104(c)(1)(B). At this point in the litigation, the undersigned is not in a position to determine whether these named Plaintiffs did indeed exercise independent control over their accounts. However, the undersigned does find that the issue of independent control will require an individual analysis for each class member. Examining the issue of independent control for each of hundreds or thousands of Plaintiffs will make a class action unwieldy and impracticable.

To show the individual nature of the analysis, the Defendants have submitted affidavits from plan participants who would be members of the class, but who, arguably, exercised independent control over their accounts, thereby relieving the Defendants of liability. For example, Mary Jane Lowe explained in her affidavit that after she read the information provided by First Citizens about the Federated funds, including Federated's own prospectuses, she "concluded that investment in the Federated LCGF provided a greater opportunity for growth over time than the PSF." Exhibit 13, Affidavit of Mary Jane Lowe, *attached to* Defendants' Memorandum, ¶ 11. After the mapover, she continued to contribute to the LCGF and kept her entire 401(k) investment in the LCGF until February 2001. *Id.,* ¶ 7. She has not removed any of her money from the LCGF. *Id.,* ¶ 10. In March 2001, though, she chose to direct her contribution to a different set of funds. *Id.,* ¶ 8. According to her affidavit, she currently intends to change her contribution election back to the LCGF. *Id.,* ¶ 10. Lowe's conscious and voluntary decision to keep her money invested in the LCGF and to continue contributing to the LCGF after the mapover could be considered an exercise of control. *See Unisys,* 74 F.3d at 448 (noting that exercising control can include deciding to maintain assets in a certain investment). The determination of whether she exercised independent control is an individual analysis. It would be overly burdensome to perform such an analysis with each of the hundreds or thousands of individuals in the proposed class.

The Defendants have also provided the affidavit of James Eugene Lewis III, who is an employee of First Citizens and a participant in the Plan. Exhibit 20, Affidavit of James Eugene Lewis III, *attached to* Defendants' Memorandum. Lewis is "Vice President and Manager, Retirement Plan Services Relationship Officers of the Retirement Plan Services Department of First Citizens." *Id.,* ¶ 5. He played no role in the Plan's conversion to Federated funds. *Id.,* ¶ 8. He learned about the conversion and the specifics of the Federated funds through correspondence from First Citizens, from conversations within his department, and from material he had reviewed "in connection with [his] responsibilities with other retirement plan customers of First Citizens." *Id.,* ¶¶ 8–9. He had half of his 401(k) account invested in the PSF. *Id.,* ¶ 7. After reviewing the relevant information prior to the mapover, Lewis decided to remain invested in the LCGF. *Id.,* ¶ 12. Lewis acknowledged that his investment value has decreased while it has remained in the LCGF. However, he believes the market will rebound and there is potential for strong growth. *Id.,* ¶¶ 14–15. His decision to re-

main in the LCGF was a conscious and informed one.

Like Lowe, Lewis's decision to maintain his investment in the LCGF may be considered an exercise of independent control. The fact that he is familiar with investment options through his position at First Citizens further shows the individual nature of the analysis. It is likely that Lewis had more information about the funds than many other participants. This unique knowledge would be a factor in his exercise of independent control over his account and deciding to remain invested in the LCGF. The undersigned finds that the individual analysis required to determine liability with regard to each class member would result in hundreds or thousands of mini-trials. This burden defeats the benefits of efficiency and economy provided by a class action.

## C. Rule 23(a)(3): Typicality

■ The Court further finds that the named Plaintiffs are not typical of the class as required by Rule 23. The typicality prerequisite requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). While the representatives' claims must be typical of, they need not be identical to, the claims of the other class members. *Mick*, 178 F.R.D. at 92. Further, if a putative class representative is subject to unique defenses that could become the focus of the litigation, then class certification is inappropriate. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990). In such a situation, there is a danger that the absent class members will be harmed if their representatives are preoccupied with their own, unique defenses. *Id.*

■ In the current case, the putative class representatives' claims may be similar to the class's claims, but their defenses are unique and, therefore, fail to meet the requirements of Rule 23(a)(3). Both named Plaintiffs are experienced investors who have other investment accounts. In fact, Plaintiff Wiseman was one of two members of a committee to select the funds for his bank's 401(k) plan. Such knowledge of the workings of a 401(k)

plan is certainly not typical of the rest of the class.

In addition, the defenses to the named Plaintiffs' claims are likely to dominate the litigation. Assuming *arguendo* that the Plaintiffs are able to prove the *prima facie* elements of their breach of fiduciary duty claim, their focus will then shift to proving damages. The issue of damages is key to this litigation and it is not as simple and straightforward as the Plaintiffs claim. Plaintiffs' counsel has argued that individual damages would be calculated by simply using a formula to determine the relevant decline in the value of each Plaintiff's 401(k) plan. Transcript at 21, 29. This argument implies a strict liability reading of the statute and removes any burden or responsibility on any of the Plaintiffs to be reasonable in managing their investments. The statute states, though, that the fiduciary will not be responsible for losses that are the result of the investor exercising his independent control. 29 U.S.C. § 1104(c)(1)(B). As discussed above, an individual analysis will be required to determine whether a plaintiff exercised independent control with respect to his LCGF investment. The Defendants will argue that the named Plaintiffs, as seasoned bankers and experienced investors, made the educated and independent decision to keep their investments in the LCGF. Such a defense is likely to dominate the litigation. It would be specific to the representative Plaintiffs and could realistically contradict the interests of the rest of the class. Because of the unique knowledge of the named Plaintiffs, the dominance of the defenses specific to them, and the associated risk of putting the claims of the class in jeopardy, the typicality prerequisite has not been met.

## D. Rule 23(a)(4): Adequacy of Representation

The final component of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This prerequisite is met when: "(1) the named plaintiff[s] [have] interests common with, and not antagonistic to, the Class' interests; and (2) the plaintiff[s'] attorney is qualified, experi-

enced and generally able to conduct the litigation." *In re Southeast Hotel Properties Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 607 (W.D.N.C.1993) (citations omitted). The Defendants have the burden of proving the representation is inadequate. *Id.*

Here, the Defendants have not met their burden. The named Plaintiffs appear to have the same interest as would the rest of the class: to recover damages for an alleged breach of fiduciary duty. The Defendants have failed to point out why these particular Plaintiffs, as opposed to other investors whose accounts were mapped over, would not properly represent the interests of the class. Further, all parties and the Court agree that the Plaintiffs' attorney is sufficiently qualified and experienced to handle this litigation.

After a rigorous analysis, as required for class certification, the undersigned finds that the Plaintiffs have failed to meet all of the prerequisites for class certification under of Rule 23(a). It is unnecessary, therefore, to make a determination under Rule 23(b).

### III. ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiffs' motion for class certification is hereby **DENIED.**